COSTON *v.* COSTON.

1. EVIDENCE—HEARSAY.

> On a bill by a widow to establish her ownership of a benefit certificate issued to her husband in favor of his mother, evidence that he had told complainant he had demanded the certificate of his mother and that she had refused to give it up is hearsay.

2. INSURANCE — MUTUAL BENEFIT SOCIETIES — CERTIFICATE — CHANGE OF BENEFICIARY.

> On a bill by the widow of a member of a mutual benefit society to establish ownership of a certificate issued in favor of his mother before his marriage, evidence examined, and *held*, insufficient to establish complainant's right to the certificate, though she made some of the payments thereon in reliance on his promise that he would assign or will it to her, neither of which he ever attempted to do.

Appeal from Kent; Perkins, J. Submitted June 8, 1906. (Docket No. 72.) Decided July 23, 1906.

Bill by Emma Coston against Catherine Coston and the Knights of the Modern Maccabees to determine the title to a policy of insurance. From a decree for complainant, defendants appeal. Reversed, and decree entered for defendants.

*Carroll & Nichols*, for complainant.

*Martin H. Carmody* (*Francis A. Stace*, of counsel), for defendant Coston.

*John B. McIlwain*, for defendant Knights of the Modern Maccabees.

MOORE, J. This is a controversy as to who is entitled to $2,000, payable by the Knights of the Modern Maccabees, on the death of Maurice Coston. The defendant Catherine Coston, his mother, is the beneficiary named in

the certificate, and the complainant is his widow. Maurice Coston, then unmarried, became a member of defendant society March 21, 1900, and a certificate payable at his death to his mother was issued to him and was by him delivered to his mother, who retained it until after his death. On January 29, 1901, Maurice Coston married complainant and lived with her until his death, April 21, 1904, a child having been born November 30, 1901, which is still living. No change of beneficiary was ever made, nor was any request made by the deceased, of the defendant order, to change the beneficiary. After his death, the defendant Catherine Coston filed proof of death and made her claim as beneficiary to the proper officers of the society, and, it is claimed, the complainant also presented her claim to the society, claiming to be entitled thereto as the widow of said deceased. On or about August 17, 1904, the executive committee decided that the defendant, Catherine Coston, was entitled to the money, and ordered the same to be paid to her. It does not appear that any appeal was taken from that decision. If there was it could not have been heard before this suit was brought, as the bill was filed October 6, 1904.

The by-laws, rules, and regulations of the society contain the following provisions:

"Section 2. The Great Camp shall be the highest tribunal of the order. * * * It shall have the power when an appeal is made under the laws of the order, from the actions or findings of the executive committee, to decide as to the validity of all death claims, or any other claim which a member or the beneficiary of a member, may have against it, and its decisions shall be final and binding upon every member and his beneficiary; and no suit at law or in equity shall be commenced or maintained by any member or beneficiary against it until every remedy provided by its laws has been exhausted. * * *

"Section 76. The executive committee shall have power to pass on all death claims, * * * and the said committee shall try, hear, and decide upon the justice or validity of such claim and such decision shall be binding on same unless an appeal is taken to the Great Camp.

The notice of the appeal from the decision of the committee must be filed with the Great Record Keeper within 60 days thereafter. The decision of the Great Camp in all such cases shall be final, and no suit in law or in equity shall be commenced or maintained by any member or beneficiary against the Great Camp until every remedy provided by its laws has been exhausted. * * *

"SECTION 83. No beneficiary or endowment certificate shall be made payable to any person, other than the wife, children, dependent, mother, father, sister, or brother of the member, nor can any certificate be transferred by a member to any other person than the above, and no transfer of a certificate will be binding on the order unless the member shall make such change as hereinafter provided, and consent given thereto by the Great Record Keeper. In case a member desires to change the beneficiary named in his certificate he shall make a written request therefor, and deliver the same with his certificate and the sum of $1 to the record keeper of his tent. On receiving such written request and the fee therefor, the record keeper shall forward the same to the Great Record Keeper, who shall thereupon, if consent is' given, issue a new certificate bearing the same number as the one surrendered."

It is claimed by complainant, and denied by defendants, that before and after his marriage the deceased promised to transfer the insurance to her, and that he had told her that he had done so, and that in reliance upon this, she had herself paid the dues and assessments. Counsel for complainant say there are three questions involved:

*First.* Did the complainant by her proofs establish an equitable and legal right to the insurance in controversy?

*Second.* Should the testimony of complainant be excluded as being equally within the knowledge of the deceased?

*Third.* Did complainant lose her rights to the insurance by not appearing before the committee of the order, or taking an appeal from this order or judgment?

To which counsel for the defendant the fraternal order adds another involving the following defenses:

(a) That under defendant's laws complainant had no interest in the benefit fund.

(*b*) That complainant failed to exhaust her remedy through the laws of defendant order.

(*c*) That the fund is an exempt fund beyond the process of the court, and a court of equity has no jurisdiction to enjoin defendant order from paying it to the beneficiary designated in the certificate.    Citing *Hunt* v. *Branch Circuit Judge*, 141 Mich. 423.

A disposition of the first of these questions will make a consideration of the others unnecessary.    The recollection of the witnesses as to the statement made by deceased is faulty, but giving full' effect to the testimony offered on the part of the complainant, the most that can be said of it is that complainant made some payments, relying upon a statement of her husband that he would give or assign or will the certificate of insurance to her.    As a matter of fact he did none of these things.    He never requested the defendant order to make the change.    It is claimed by complainant that he made a demand of the policy of his mother, and she refused to give it up.    This claim is based upon a statement that her husband said he had made such a demand.    No witness was called who heard such a demand made.    The testimony given was hearsay.    The persons who would know whether such a demand was made tell a very different story.    The sister of deceased testified to hearing a conversation between his mother and her brother in which he said:

"That they [referring to his wife and his mother-in-law] had been at him constantly to change his policy, and he said that owing to the fact that he had taken it out in his mother's name before he was married, and was married very young and had some younger brothers and sisters in the family, he felt as though he owed her something for the fact that she had to bring us up and give us an education.    That they wanted him to change his policy, and he said, 'No, he never would; he had made it out in his mother's name, and he would never change it.'"

The mother and the father of the deceased both corroborated this statement.    Peter Visner, a disinterested witness, testified that deceased told him in 1902 or 1903 that

his policy was payable to his mother "because she deserves it."

It is significant in this connection that deceased never indicated by letter or in any other way to the fraternal order that he desired to change the beneficiary. It is said by the solicitors for complainant that the minority opinion in *Great Camp K. O. T. M.* v. *Savage*, 135 Mich. 459, ought to control the case in favor of complainant. An examination of the cases shows they are easily distinguishable. In that case a bill of interpleader was involved. The defendant order made no contest. Here it makes a contest and insists that no liability either legal or equitable attached to it in favor of complainant. In that case Mrs. Savage had in fact been named as a beneficiary in a certificate, and a change was made without her knowledge or consent. Here the most that can be said is that deceased said he would give, assign, or will the certificate of insurance. In that case if all the testimony offered was competent it established the claim of the wife. In this case we think it fails to do so.

The decree is reversed, and one may be entered here in favor of the defendants, with costs.

CARPENTER, C. J., and MCALVAY, GRANT, and BLAIR, JJ., concurred.