SCHILLER-BUND *v.* KNACK.

1. INSURANCE—MUTUAL BENEFIT POLICY—HUSBAND AND WIFE—DIVORCE—EFFECT OF DIVORCE UPON BENEFICIARY'S RIGHTS.

Where decedent was a member of a mutual insurance association, and after obtaining his certificate he returned home and gave it to his wife, stating that it was hers and she would have to keep it up, and where the wife continued to pay the dues for a number of years until she obtained a divorce from her husband, when she discontinued the payments, and where the insured afterwards married again and procured a reinstatement of his policy in favor of the second wife, the original beneficiary did not secure such vested rights in the policy, by virtue of the arrangement between herself and husband, as to prevent change of beneficiary under the rules of the society permitting such change at the instance of the insured member.

2. SAME — MUTUAL BENEFIT ASSOCIATION — CHANGE OF BENE-
FICIARY.

The regulation of a mutual benefit association permitting
members to change the beneficiary in their certificate or
policy is a valid and reasonable one, and the fact that the
original beneficiary had possession of the certificate
would not affect the right of the insured to make the
change so as to substitute his second wife in her place.

3. HUSBAND AND WIFE—CONTRACTS — INSURANCE — UNDUE INFLU-
ENCE.

There is no rule of law or of morals which makes it un-
lawful or improper for a wife to use her wifely influence
for her own benefit, or for that of others, unless she acts
fraudulently or extorts benefits from her husband when
he is not in a condition to exercise his faculties as a free
agent.

4. SAME—DIVORCE.

A divorced wife, after the second marriage of an insured
member of a mutual beneficiary association, was not a
member of his family so as to entitle her to claim the
right of a beneficiary.

Appeal from Wayne; Van Zile, J. Submitted No-
vember 12, 1914. (Docket No. 69.) Decided January
4, 1915.

Bill by the Schiller-Bund against Martha Knack
and Bertha Knack for a decree of interpleader. From
the decree entered defendant Martha Knack appeals.
Reversed.

*Arthur E. Schreiter* and *Jasper C. Gates,* for ap-
pellant.

*William M. Mertz,* for appellee.

STONE, J. This is a suit of interpleader. The issue
is based upon a bill of interpleader filed by complain-
ant, a fraternal benefit society, organized under the
laws of this State, for the purpose of ascertaining
which of the two defendants is entitled to the sum
of $1,000, due upon a certificate of membership of

August Knack, deceased, and which money complainant has paid into court. A decree of interpleader was entered. From a decree awarding the fund to defendant Bertha Knack, the defendant Martha Knack has appealed.

Defendant Bertha Knack claims this money by virtue of a benefit certificate issued in her favor January 15, 1903. Defendant Martha Knack claims by virtue of a second certificate dated July 1, 1911, she claiming that the certificate issued to Bertha had been forfeited, and that the second certificate was legally issued in its place to her as beneficiary. When Bertha's certificate was issued, she was the wife of August Knack. He took the certificate home and handed it to her, and "told her to keep it, for it was hers, and that she would have to keep it up; that he did not want to be bothered with it." From this time until and including December 10, 1910, Bertha paid the dues accruing upon this certificate. The dues of December 10th were paid January 14, 1911, which was the last payment made by her.

November 18, 1909, a decree of divorce was granted by the circuit court for the county of Wayne, in chancery, to Bertha Knack in a suit against August Knack. It further appears that in connection with this suit, by a written agreement between them, August Knack transferred to Bertha a house and lot they were then buying on a contract, and also paid her in cash $100. This agreement contained the following clause:

"Said complainant, Bertha Knack, hereby agrees to accept the said sum of $100 and said conveyance of all his right, title and interest in and to said land contract and said premises, in full for all claims of alimony, costs, and solicitors' fees in said cause, and in full for all present and future claims of support, and for all claims whatsoever against said defendant August Knack."

On December 24, 1910, August Knack was married

184 Mich.—7.

to defendant Martha Knack, and they lived together until his death, May 1, 1912.

There is considerable uncertainty and indefiniteness in the testimony as to just what occurred with reference to the claimed forfeiture of the certificate. Some extracts from a copy of the by-laws of the complainant were offered in evidence. Article 17, subdivisions "*m*," "*n*," and "*v*" of these by-laws are as follows:

"(*m*) Every member of the Bund shall receive, after initiation, a certificate of his or her class duly executed, and shall signify his or her acceptance of the laws of the Bund with his or her full signature.

"(*n*) Every member is obliged to pay all assessments called by the executive committee promptly, failure to do so forfeits all rights and privileges as a member."

"(*v*) A member failing to pay dues to the society within the prescribed time shall lose benefits in the Bund, as well as a member not paying the assessments."

Article 20 of these by-laws contains the following:

"Should a member fail to pay an assessment within the time specified, such member shall be out of benefit, but 30 days' time may be given to pay the arrearages, and if paid within this time, the member shall again be considered in good standing from the date of such payment. Should a member neglect to pay the assessments during this time it shall become the duty of the secretary to notify such member before the 28th day of the second month, by registered letter, to pay the assessments, together with fifty cents for costs within ten days after the 28th of the second month, otherwise the member shall be stricken from the roll. The executive committee may grant 30 days' further time to a member, about to be stricken."

It is claimed that on March 4, 1911, the secretary of the Local Verein of the Schiller-Bund sent a written notice addressed to Mr. and Mrs. August Knack, at 961 Frederick street, Detroit, where Bertha Knack

then resided, that unless the arrears and dues were paid "within ten days you are marked off the books and your certificate is no good." Bertha testified that she received this letter. There was testimony that afterwards, on April 3, 1911, the secretary of the Local Verein sent Bertha another notice, in German and English, to much the same effect. This was sent by registered mail and came back to the secretary unopened. Thereupon she was "marked off the books." While this condition of things existed, the evidence tends to show that August Knack requested Bertha to give him the old certificate, which seems to have been in her possession during all these years, and this was refused by her.

Article 7, subdivisions "*p*" and "*q*" of the constitution and by-laws, are as follows:

"(*p*) A member wishing his certificate changed shall notify the secretary of his or her society and deliver the old certificate, and a fee of 50 cents will be charged for such change.

"(*q*) A member having lost his certificate through fire, theft or any other cause may have a new certificate issued after making affidavit of such fact before a notary public. A fee of 50 cents will be charged."

After the refusal of Bertha to surrender the certificate, the following affidavit was made by August Knack:

"STATE OF MICHIGAN, COUNTY OF WAYNE—*ss.*: August Knack of the city of Detroit, county of Wayne, and State of Michigan, being duly sworn, deposes and says, that he is the insured named in a certain life insurance policy in the Schiller-Bund No. 1; said policy is not in his possession and that he is unable to procure the same.

"And further deponent saith not."

This appears to have been signed by August Knack, affiant, with the signature of the notary public. It is without date. Upon the presentation of this affidavit, probably in the month of May, 1911, and after

some discussion in the society, a new certificate was issued upon the payment of all past dues and assessments. This new certificate was issued to Martha; or, as some of the witnesses say, August Knack was reinstated and a new certificate was issued, wherein Martha was made the beneficiary at the request of August.

It is the claim of defendant Bertha Knack, and there is evidence tending to support it, that in the month of May she went to the secretary and offered to pay up her arrears of dues, etc. It is undisputed that he refused to accept the money, claiming that she had no right to pay it. The secretary testified that this was after August had applied to have the certificate changed, and had already paid up the back dues. Bertha testified that it was about the middle of May, 1911. After the issuance of the certificate in which Martha was the beneficiary, all dues were paid by August Knack down to his death.

The regularity of some of the proceedings in declaring forfeited the old certificate in which Bertha was the beneficiary, and the reinstating of August, and the issuing of the new certificate in which Martha was the beneficiary, is considerably discussed by counsel on both sides. The important question, however, in the case, and the one upon which it must turn, in our opinion, is whether Bertha Knack acquired a vested interest in the original certificate in question. We quote from the appellee's brief upon that subject as follows:

"The chief and final question to be decided upon this record is whether Bertha Knack acquired a vested interest in the original certificate in question, based upon contract with her husband and such performance on her part, that equity will estop her husband, and the society as well, from changing the beneficiary to her detriment; and will equally estop Martha Knack, the new beneficiary, from claiming the fund;

and also whether under the circumstances in this case 'Martha's Certificate' is not null and void."

As we have already stated, August Knack joined the Schiller-Bund in 1903, and obtained the certificate naming Bertha as his beneficiary. A daughter of Bertha and August testified as follows:

"I remember when this first certificate was first made out. Mama did not care about papa going into it because she felt it would be too much expense. He says, 'Well, I am going into it, but you will have to take care of it and pay for it.' He says, 'You never can say I haven't done anything for you.' I do not remember the certain time that he went into it. * * * I know that mother made the payments on this certificate. If mother did not go sister went until I was old enough to go. Mother furnished the money. * * * She worked to get the money. She did sewing as long as I can remember. With her earnings she made the payments on the house and also supported the family and also kept the assessments up. That is as long back as I can remember about. My father was working. He spent all of his money on drink as long back as I can remember."

Another daughter testified to substantially the same.

We have stated this testimony because it is claimed to support the position taken by appellee, and it may be said to be undisputed that Bertha always held this certificate and, except for the initiation fee of $2, paid all dues and assessments regularly on it from the date of its issuance, January 15, 1903, to and inclusive of January 14, 1911, and that in May, 1911, she offered to pay the back dues and resume payments, which was refused, and her offer ignored by the secretary.

Whatever irregularities there may have been about the reinstating of August Knack and the issuing of a new certificate to him, the right of the defendant Bertha must depend upon whether she had a vested

interest in this first certificate; for if she did not, and the society saw fit to and did issue a new certificate making Martha the beneficiary, and it was upon this new certificate that payments were made by August Knack, from its date down to the time of his death, he having the right to change the beneficiary in his certificate, the defendant Bertha would have no standing in court. We therefore agree with counsel for the appellee that the chief and final question to be decided upon this record is whether Bertha Knack acquired such vested interest in the original certificate. Upon that question we have read with care the record and authorities cited by counsel upon both sides, and are of opinion that, giving the evidence in behalf of Bertha its strongest probative force, it does not show such a contract based upon sufficient consideration as would be binding upon the parties and would render it beyond the power of August to change the beneficiary. Unless Bertha had a vested interest in this policy by virtue of a valid agreement and contract, based upon a sufficient consideration, it is our opinion that the divorce proceedings would cut off her right to any benefit under the policy under our statute (section 7740, 3 Comp. Laws, 4. How. Stat. [2d Ed.] § 9022) and under the following decisions: *Order of Mutual Protection* v. *Dewey,* 142 Mich. 666 (106 N. W. 140, 3 L. R. A. [N. S.] 334, 113 Am. St. Rep. 596, 7 Am. & Eng. Ann. Cas. 681); *Grand Lodge A. O. U. W.* v. *McKay,* 149 Mich. 90 (112 N. W. 730); *Dahlin* v. *Modern Maccabees,* 151 Mich. 644 (115 N. W. 975); *Green* v. *Green,* 147 Ky. 608 (144 S. W. 1073, 39 L. R. A. [N. S.] 370, Am. & Eng. Ann. Cas. 1913D, 683), citing, among other cases, *Grand Lodge A. O. U. W.* v. *Child,* 70 Mich. 163 (38 N. W. 1).

In *Green* v. *Green, supra,* the court said:

"Without approving of the rule applied by some courts in the case of ordinary life insurance compa-

nies, we are of the opinion that there is every reason why a different rule should prevail in the case of mutual benefit societies. The latter are organized for the benefit of the members, their families, and those dependent upon them. To permit the benefits to be paid to those (who) at one time sustained such relation, but did not sustain that relation at the time of the member's death, would be to frustrate the purpose of the society. In other words, to entitle one to receive the proceeds of a certificate in a fraternal society, he must, unless the contract or charter and by-laws provide otherwise, bear the required relation at the time of the member's death. That being true, we are of the opinion that the divorce operated to revoke the designation of appellant as the beneficiary in the certificate in question and to substitute decedent's mother in her place."

The trial court decreed this fund to the defendant Bertha upon the authority of *In re Reid's Estate,* 170 Mich. 476 (136 N. W. 476). That case grew out of a claim presented by Joseph Stockwell against the estate of Mary E. Reid, his former wife. It appeared that Thomas Shiveley, the father of the deceased, was a member of the Royal Arcanum Insurance Association and had a benefit certificate therein of $3,000. On a date stated he made deceased, then Mrs. Stockwell, the wife of claimant, the beneficiary. Thomas Shiveley died March 4, 1904, and she drew the amount of $3,000 upon said certificate. The claimant's evidence tended to show that the making of deceased the beneficiary of this insurance was in pursuance of a valid agreement between Thomas Shiveley and deceased that the claimant Stockwell should keep up the insurance and be repaid out of the insurance money the amount which he expended for that purpose. Also, that from 1891 up to 1900 the claimant did keep up this insurance and paid out for that purpose the sum of $1,200 under an agreement between himself and wife that he should be repaid out of the insurance money. Claimant sought to recover this sum of

$1,200 against her estate. The vital question presented to and decided by this court was whether the deceased had any such interest in the insurance as empowered her, although a married woman, to make a contract with her husband to repay what he should expend in that behalf. As a matter of fact, when deceased made the agreement in question, she was the beneficiary under a valid agreement with her father, and she continued to be such beneficiary until the insurance money was paid to her. During this time Thomas Shiveley, her father, never attempted to make a change of beneficiary. Certainly she had a right to make a contract with her husband in relation to the matter, and there was a good and valid consideration for such contract. We must recognize the rule which has been frequently announced by this court that the by-law of a society permitting the changing of a beneficiary is a reasonable regulation of the member to exercise the power of appointment whenever and so often as he pleases. As this court said, as early as *Mutual Association* v. *Montgomery,* 70 Mich. 587, 594 (38 N. W. 588, 591, 14 Am. St. Rep. 519):

"Circumstances may intervene which may make it desirable for the member to make a change in the beneficiary, and, as such designated beneficiary has no vested right in the fund or bounty of the donor, his consent to the change is not required, nor has he any interest that can be either protected or asserted in a court of law."

And the fact that the certificate was in possession of Bertha, and that she made the payments, is not sufficient to give her the right to protest against a change of beneficiary. *Grand Lodge A. O. U. W.* v. *McGrath,* 133 Mich. 626 (95 N. W. 739); *Metropolitan Life Ins. Co.* v. *O'Brien,* 92 Mich. 584 (52 N. W. 1012); 6 Cyc. pp. 124-126.

The rule is well stated in Niblack on Accident In-

surance and Benefit Societies (2d Ed.), in the latter part of section 227, as follows:

"A beneficiary who pays the assessment on a certificate voluntarily and gratuitously, and not under a contract with the assured, acquires no vested interest therein as against a person afterward named as beneficiary by the member. A member may change this beneficiary, though the latter has paid the assessments and has possession of the certificate. But it has been held that where a person became a member of a society under an agreement with the beneficiary designated in his certificate, that the beneficiary should pay all assessments, and he paid them under the agreement, the beneficiary acquired a vested interest in the certificate, and the member could not afterward make another designation. A provision of the charter or of a contract of the society, declaring that a member shall have a right to make a change of his beneficiary without the consent of the latter, applies when the original designation is in the nature of an inchoate or an unexecuted gift, and where there is no agreement on the part of the member, the society and the beneficiary that no change shall be made. It does not prevent an express contract between the member, the beneficiary and the society that a vested right shall pass to the beneficiary."

We have examined the cases cited in the briefs of counsel, and are unable to find a case in which it was held there was a vested right passing to the beneficiary where there was not an express contract founded upon valuable consideration (moving to the assured) between the assured and the beneficiary. One of the leading cases is that of *Catholic Benevolent Legion* v. *Murphy*, 65 N. J. Eq. 60 (55 Atl. 497). In that case Vice Chancellor Pitney, now a justice of the supreme court of the United States, referring to the contract between the husband and wife, said:

"The transaction referred to between the husband and wife, when acted upon, as it was, by the wife, amounted to an irrevocable waiver by him in her favor of his right to exercise the power of change of

designation. It operated, in equity, as a release of such power to her. Her right became vested by reason of her payments and the support which she furnished him, and it was not competent for the complainant, by a change of rules, to enable her husband to divest them, or, rather, it was not competent for the husband to take advantage of such change of rules for that purpose. *   *   * In this case, if the wife, by the continued possession of the certificate, under claim of right, with the consent of her husband and the continued payment of the monthly and quarterly dues thereon, and by her continued support of her husband in anticipation of receiving the benefit of the certificate, acquired an equity in the fund created thereby, no act of her husband, based on any new rule adopted by the complainant association or anybody in any other manner, can deprive her of that right."

Another case cited by counsel for appellee is that of *Leaf* v. *Leaf,* 92 Ky. 166 (17 S. W. 354, 854). We quote from the headnote as follows:

"While a member who has had a certificate issued payable to one member of his family, may, ordinarily, with the consent of the order, have a new certificate issued substituting the name of any other member of his family as the beneficiary, yet equities may arise which will prevent such a change; and where, as in this case, the wife, to whom the original certificate was issued, has kept it alive by paying the assessments out of her own earnings and has surrendered property to her husband upon the faith that she was to have the fund, she has a superior equity to all others; and, although the husband had a new certificate issued, naming his adult children as the beneficiaries, the widow, upon his death, is entitled to the fund for the benefit of herself and infant children residing with her."

And it was held in such a case that the vested right would continue notwithstanding a divorce between the parties.

In this case there was no such binding, valid contract existing between August Knack and Bertha, his

wife, as would give her a vested interest in the policy.

The court below seems, by its opinion, to have laid some stress upon what it terms "undue influence" exercised by Martha, the second wife, to induce her husband, August, to make her the beneficiary under the new certificate. We are unable to find any fraudulent conduct on the part of Martha or any want of mental capacity on the part of August in this transaction. The following language of this court, we think, is appropriate:

"We do not know of any rule of law or of morals which makes it unlawful or improper for a wife to use her wifely influence for her own benefit or for that of others, unless she acts fraudulently, or extorts benefits from her husband when he is not in a condition to exercise his faculties as a free agent. A faithful wife ought to have very great influence over her husband, and it is one of the necessary results of proper marriage relations." *Latham* v. *Udell,* 38 Mich. 238; *Pierce* v. *Pierce,* 38 Mich. 412.

Being satisfied from this record that defendant Bertha Knack has no vested right in this certificate, in our opinion, she is in no position to recover here. The decree of the circuit court is reversed, and a decree will be entered in this court in favor of the defendant Martha Knack entitling her to the fund, less the costs which have been paid to complainant out of the same. The appellant will recover against the appellee her costs in this court to be taxed.

BROOKE, C. J., and MCALVAY, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.