MODERN BROTHERHOOD OF AMERICA v. HUDSON.

1. INSURANCE—VESTED INTEREST—CONTRACT RIGHTS.
There is no vested right which passes to a beneficiary who has no contract founded upon valuable consideration passing to the insured. Such vested right is not created by the possession of the policy and payment of the dues.

2. SAME.
A promise to keep up the payments is not sufficient in law to create in the beneficiary a vested interest in the fund and certificate.

3. SAME—TRANSFER OF BENEFITS.
And where one brother agreed to pay all assessments and dues and to take care of his brother in sickness and give his body a decent burial, in consideration of which under-

taking he was made a beneficiary of his insurance, but the latter did not rely on or carry out the agreement, and later repudiated it, he could not recover on the policy of life insurance.

4. SAME.

The right of a holder of a certificate, under a contract of such a nature, has generally been upheld, and especially if his interest has become vested.

Appeal from St. Clair; Tappan, J. Submitted October 11, 1916. (Docket No. 115.) Decided December 21, 1916.

Bill of interpleader by the Modern Brotherhood of America against Fred Hudson and Guy Hudson to determine the right of the proceeds of a benefit certificate. From a decree for defendant Fred Hudson defendant Guy Hudson appeals. Reversed, and decree entered in accordance with opinion.

*Elmer E. Stockwell* (*John B. McIlwain*, of counsel), for appellant.

*Burt D. Cady* and *Lincoln Avery*, for appellee.

OSTRANDER, J. The fund claimed by each of the defendants, being the proceeds of a benefit certificate issued by complainant upon the life of Harry Hudson, deceased, has been paid into court. Originally Jane Hudson, mother of defendants and of three other sons, procured to be issued by complainant upon her life a certificate in which her sons were named as beneficiaries. It is to be inferred that at her suggestion her sons George, Don and Harry each procured certificates to be issued upon their lives in which their mother was named as beneficiary. The defendants were older sons and married. The others were unmarried and lived with their father and mother. With the money received from them in payment of board, and with money she earned, Jane Hudson, until her

last illness, paid all of the dues and assessments upon all of the certificates. In this way Harry Hudson was the insured, and his mother was the beneficiary in three certificates, namely, one for $1,000 issued by complainant, one for $1,000 issued by the Loyal Guard, and one for $250 issued by the Metropolitan Life Insurance Company. The mother died December 1, 1910; her husband and her sons Harry and George being at that time members of her family. During her last illness her son Fred paid, he says, with his own money, whatever sums were required to keep the certificates in force, apparently making one payment on them, or some of them—a few dollars. After she died there was talk among the sons with respect to continuing the certificates in force, with a change of beneficiary. Some arrangement was made. What it was, the legal effect of it, and whether it was carried out are debated questions. There was a surrender of certificates, and new certificates were issued, Fred being named as beneficiary in those issued by the complainant and the Metropolitan Life Insurance Company, and Guy being named as beneficiary in the one issued by the Loyal Guard, all upon the life of Harry. After the complainant issued the new certificate, naming Fred as beneficiary, he paid dues and assessments amounting to $48.04; paid all dues and assessments. Harry Hudson died June 25, 1914, having been injured a year earlier, and sick and more or less helpless from that time. He lived with Fred some of this time, and with Guy during the last months of his life. He executed an application for a change of beneficiary in complainant's certificate from Fred to Guy on or about June 13, 1914, filed it in compliance with the rules of complainant, but no new certificate was issued, because Fred, who had the old one, refused to surrender it. Guy Hudson contends that, his brother Harry having done all that he could do to secure a change of

beneficiaries, the case stands as if a change had been made pursuant to his brother's wishes and directions. Fred contends that an agreement existed between himself and deceased brother, fully executed by himself by paying all assessments and dues upon the certificate in question, on account of which he had a vested interest in the certificate (and so in the fund) which estopped his brother from making a change of beneficiary.

The testimony took a rather wide range, involving the alleged agreement between Fred and Harry; whether Guy and his wife neglected Harry in his last sickness; whether there was a conspiracy between the secretary of the local lodge and Guy to induce Harry to make a change of beneficiary. The court found the charge of a conspiracy unsustained by the proof, found that Guy and his wife took excellent care of Harry during his last illness, and that Harry did all that it was possible for him to do to effect a change of beneficiaries. It was found also that Harry had himself never paid an assessment upon his certificate nor any dues to the local lodge; that Fred paid them from the time his mother died, three years and seven months, until Harry died; that Fred aided Harry by procuring a doctor, furnishing for his use a wheel chair, and some clothing; and that all—assessments, dues, and other contributions—were made by Fred in pursuance of the alleged agreement of the brothers. The conclusion is that Fred acquired a substantial vested interest in the certificate and fund. By the payment of dues he preserved for his deceased brother the rights and benefits of member of the local lodge, which of itself was a valuable consideration for the alleged agreement by which Fred became beneficiary of the certificate. There is no finding upon the subject of the terms of the agreement, if one was made, by which defendants took over the certificates upon

the life of Harry after the death of the mother, except as above stated, and the further one that there was a mutual understanding that both of the defendants "should aid Harry in case of sickness and death."

There being in court, in the fund, $958.90, the court directed that Guy should be reimbursed one-half of the funeral expenses, $97, that $100 more should be paid on account of expenses of the last sickness of Harry to Guy's wife, if no objection was made, and the balance of the fund, $761.90, was ordered paid to Fred, no costs being allowed to either party defendant.

The conclusions which I have, in substance, stated were written and a motion to amend them was made by Guy Hudson, an amended finding was made, but the eventuality was the same, and a decree in conformity with the foregoing statement was entered, the decree reciting that there was a "mutual understanding and agreement between the said three brothers that defendants Fred and Guy should care for said insured during sickness and bury him after his death."

In his amended answer to the bill of complaint defendant Fred Hudson, appellee, sets up that the agreement between himself and his brother Harry was that Fred should pay all assessments, dues, and levies made against the said Harry on account of and by virtue of his having said certificate, and, in consideration of such payments to be made, said Harry agreed to name Fred beneficiary in said certificate, alleging further that he (Fred) had paid in accordance with the agreement.

Defendant Guy Hudson in his answer alleges that as an inducement to Harry to surrender the old and procure a new certificate in which Fred was beneficiary, Fred promised and agreed that he would pay all dues and assessments payable to complainant, and, in the event that said Harry became disabled or sick and unable to care for himself, Fred was to aid and

assist him, furnish him a home, provide necessary medicine, medical attention, and nursing during such sickness or disability, and, in the event of death, provide for burial and pay the expenses thereof; that Fred did not perform this agreement, but, on the contrary, neglected and refused to aid and provide for Harry during his illness, who became dependent upon Guy for care and nursing, medical attention, and medicines; that Guy made suitable provision, with his wife nursed said Harry, and upon his death provided suitable burial, and thereby incurred expenses which should have been paid by Fred. It is alleged further that upon Fred's refusal to care for him as he had agreed to do Harry requested the return of said certificate and requested complainant to issue another, naming Guy as beneficiary.

A provision of complainant's certificate permits an assured member totally and permanently disabled to withdraw in cash one-half the sum payable at death—in this case, one-half of $1,000—thereby canceling the certificate. The assured, Harry, applied for, and in May or June, 1914, executed, papers for the purpose of securing the sum secured to him by the certificate under said provision thereof. Learning of the contemplated action of Harry in this behalf, Fred procured from the probate court, and had served, a citation in an inquisition as to the mental competency of Harry. The complainant took 90 days, under its laws, to consider the application for payment, and the inquisition in probate court was continued and never brought to a hearing. It is obvious that the inquisition proceeding was instituted for the purpose of preventing the assured canceling the policy by withdrawal of the disability benefit, and equally obvious that there was no foundation, in fact, for any claim that Harry was mentally incompetent.

194—Mich.—9.

In his testimony, which was received without objection, Fred denies any agreement with his brother Harry to do more than to pay dues and assessments if he was named as beneficiary in the certificates. The testimony of George Hudson was:

"*Q.* What was said by Harry respecting his insurance, or Fred respecting Harry's insurance?

"*A.* Harry never said nothing. Fred asked what we were going to do with ours; if we were going to keep them up.

"*Q.* Whom did he mean by 'we'?

"*A.* Mine and Harry's.

"*Q.* What did Harry tell him?

"*A.* Harry says, 'I guess I could keep it up.'

"*Q.* Harry told you he would keep it up?

"*A.* He said, 'I was going to drop it.' Fred said, 'You may keep it up for a little while, and then you will turn around and drop it after so much being paid into it,' and he said, 'If you will turn it over to me, I will pay for it and pay up the dues.'

"*Q.* Anything else?

"*A.* Harry spoke up and says, 'You will pay up the dues, but this policy is to look after me; I want a burial,' and Fred, he said, 'If you will turn it over to me, I will look after you through sickness and after death'; he says, 'That is what they are for.'"

There is other competent testimony to the same effect. There is testimony, too, which upon analysis tends to prove nothing more than this: That Harry could not, probably, make necessary payments, and the certificates would therefore lapse, and that, in view of this fact, his brother Fred made the offer to make the payments if he was made beneficiary. In other words, Fred voluntarily offered to pay, and voluntarily paid, such assessments and dues as were necessary to keep the certificate in force, being under no legal obligation to pay them longer than he pleased.

In *Schiller-Bund* v. *Knack*, 184 Mich. 95 (150 N. W. 337), the court considered whether certain facts proved that a beneficiary in a certificate similar to the one in

this case had a vested interest therein so that the insured ought not to be permitted to make a change of beneficiaries, stating the governing rule. It was said, among other things:

"We have examined the cases cited in the briefs of counsel, and are unable to find a case in which it was held there was a vested right passing to the beneficiary where there was not an express contract founded upon valuable consideration (moving to the assured) between the assured and the beneficiary."

It had been held repeatedly that the fact that the certificate was in the possession of a beneficiary named in it and that payments had been made of dues and assessments by the named beneficiary was not enough to create a vested interest or prevent a change of beneficiary. *Union Mutual Ass'n* v. *Montgomery,* 70 Mich. 587 (38 N. W. 588, 14 Am. St. Rep. 519); *Grand Lodge, A. O. U. W.,* v. *McGrath,* 133 Mich. 626 (95 N. W. 739); *Metropolitan Life Ins. Co.* v. *O'Brien,* 92 Mich. 584 (52 N. W. 1012).

The distinction which the court made, and which counsel for appellee makes, namely, that because *dues* were for the benefit of the local lodge and the payment of them retained Harry's membership in the local lodge, there was therefore a benefit derived by him from their payment distinct from the benefits resulting from the payment of assessments, is not sound. It is assumed, and nothing to the contrary is made to appear, that a beneficial membership in complainant's association can be had only by payment of both assessments and dues; the consideration moving to the complainant from the insured for the benefits promised by the certificate and laws of the association is the payment of both dues and assessments. Therefore the promise of Fred, if he made one, to pay assessments and dues, and the payment of them, was not sufficient in law to create in Fred a vested interest in the certifi-

cate and fund, and would not limit the right of the insured to change his beneficiary at pleasure.

Assuming that defendant Fred Hudson promised that he would not only pay assessments and dues, but would take care of his brother Harry in sickness and give his body decent burial, in consideration of which undertaking he was made beneficiary in the certificate (a promise which Fred denies that he made), what are the controlling equities? Such a promise was not kept. Fred does not claim that he furnished anything to his brother, doctor, clothing, or use of a wheel chair, in pursuance of any agreement or legal obligation to do so. When in lieu of such assistance Harry proposed to secure from complainant the only thing promised by it which would benefit him in his last illness (he had tuberculosis of the lungs), which was one-half the sum payable in case of death, Fred attempted to prevent such a result. And when Harry found he could get neither assistance nor the disability benefit which his certificate and the laws of complainant secured to him, he changed, so far as his actions could so operate, his beneficiary.

Equitably defendant Fred Hudson is not entitled to rely upon an agreement which he says he did not make, and the court found that he, or he and his brother together, did make, which he did not perform, did not offer to perform, and, so far as statements and actions can be relied upon, repudiated if it was made. The right of a holder of a certificate, of the nature of the one before us, to change his beneficiary at pleasure, is one which this court has uniformly upheld, and the right ought not to be and will not be denied unless it is plain that the beneficiary named in the certificate has by contract and by performance acquired a vested interest in the certificate and fund. The case is ruled by *Schiller-Bund* v. *Knack, supra.* In any event equity demands no more than that Fred be repaid the sums

he expended for dues and assessments, the remainder of the fund to belong to the appellant, a conclusion which appellant in his brief approves.

The decree is reversed, and one may be entered in this court in accordance with this opinion; appellant to recover costs of this appeal.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.