### BLAND *v.* BLAND.

1. WITNESSES — MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—EVIDENCE—ADMISSIBILITY.

In a suit by a widow against the father and mother of her deceased husband for the specific performance of an antenuptial contract to make her the beneficiary in his life insurance policies in place of his parents, while testimony by her as to facts equally within the knowledge of her deceased husband was incompetent under the statute, she could testify as to conversations she had with the father and mother not in her husband's presence.

2. INSURANCE—CHANGE OF BENEFICIARY—ANTENUPTIAL AGREEMENT—EVIDENCE—SUFFICIENCY.

Evidence *held*, sufficient to establish that deceased husband agreed with plaintiff, if she would marry him, to make her the beneficiary in his life insurance policies in place of his parents, and that they knew of, and acquiesced in, such agreement.

3. SPECIFIC PERFORMANCE—INSURANCE—ANTENUPTIAL CONTRACT—PROCURING CAUSE—EVIDENCE—SUFFICIENCY.

To entitle a wife to the specific performance of an antenuptial agreement to make her the beneficiary in his in-

surance policies in place of his parents, it is unnecessary for her to show that said agreement was the sole procuring cause and that there was no mutual affection.

4. SAME—CHANGE OF BENEFICIARY—PROVISIONS OF POLICY.
   *Held*, that plaintiff was entitled to the specific performance of said antenuptial agreement, the individual defendants having known of same and acquiesced therein, and no objection being raised that the provisions of the policies prevented a change of beneficiary by the act of the deceased alone.

5. INSURANCE—CHANGE OF BENEFICIARIES—CONTRACTS—CONSIDERATION.
   Testimony by the father that the son told him that the beneficiaries (the parents) in his life insurance policies would not be changed, *held*, insufficient to establish a contract founded upon a valuable consideration moving to the assured that the beneficiaries should never be changed.

6. SAME—VOLUNTARY PAYMENT OF PREMIUMS—VESTED INTEREST.
   Although the father occasionally let the son have money to pay the premiums on said insurance policies, where he did it voluntarily and not in reliance upon said promise of the son, *held*, that the parents did not thereby acquire a vested interest in said policies.

Appeal from Wayne; Hart (Burton L.), J., presiding. Submitted October 6, 1920. (Docket No. 26.) Decided December 21, 1920.

Bill by Gladys Bland, individually and as special administratrix of the estate of Edward G. Bland, deceased, against Joseph Bland, Louise Bland and the Mutual Benefit Life Insurance Company to enforce an antenuptial agreement respecting certain policies of insurance. From a decree dismissing the bill, plaintiff appeals. Reversed and decree entered for plaintiff.

*Thomas A. Conlon*, for plaintiff.

*Lodge & Brown*, for defendants Bland.

Plaintiff is the widow of Edward G. Bland, deceased. The individual defendants are his parents. The corporation defendant is a life insurance company authorized to do business in this State. Plaintiff and Edward G. Bland were married June 17, 1915. He died October 25, 1918. Plaintiff had spent several winters in the south and on one of these occasions there met a young man to whom she later became engaged. She was a friend of a sister of Edward and some time before the marriage he began paying his attention to her. The record fairly discloses that Edward's parents were much impressed with her and extremely anxious that she should look with favor upon him. Edward at this time held two policies of life insurance issued by the corporation defendant, each being for the sum of $1,000, the beneficiaries named being his father and mother. These policies permitted a change of beneficiary at the will of the insured. It does not appear that any conditions were imposed on the exercise of this privilege.

It is the claim of the plaintiff that Edward urged his suit most earnestly upon her, and that he was aided in this by both his father and mother. It was pointed out to her that the man she was engaged to had little of this world's goods, and could not provide her a good home, while Edward had a good salary, owned a fine house, was prosperous and could make her a good home; that he had a large amount of life insurance which he agreed should be transferred to her if she would marry him, and that finally she was persuaded to break her engagement with the young man in the south and marry Edward in reliance upon his agreements and representations to her including his agreement to make her the beneficiary in his policies of insurance. It is her claim that his representations as to his property were not all true; that he failed to make the actual transfer of the insurance; and that

at his death she was left practically penniless with a small child to support.

Plaintiff's bill, while inartistically drawn, may be fairly said to present a case for the specific performance of the antenuptial agreement to make her the beneficiary in these insurance policies. The insurance company brought the money into court and asked an order of interpleader, which was granted. The case is, therefore, one between claimants of the fund. The trial judge held that the testimony of plaintiff as to facts equally within the knowledge of deceased was incompetent under the statute and concluded that the other testimony was insufficient to establish plaintiff's case. She appeals from a decree dismissing her bill.

FELLOWS, J. (*after stating the facts*). We agree with the learned trial judge that the testimony of the plaintiff as to facts equally within the knowledge of the deceased is incompetent under the statute. *Wallace* v. *Mystic Circle*, 127 Mich. 387; *Great Camp K. O. T. M.* v. *Savage*, 135 Mich. 459; *Franken* v. *Supreme Court I. O. F.*, 152 Mich. 502; *Peirson* v. *McNeal*, 137 Mich. 158. But disregarding her testimony which falls within the inhibition of the statute, we are satisfied from the other testimony in the case that such antenuptial agreement was in fact made. Mr. Carpenter, the uncle of plaintiff and with whom she lived at the time of her engagement and marriage, testified:

"*A.* Why I remember of coming in one afternoon— * * *

"Coming into my home and Mr. Bland was there and I was a trifle exercised over the amount I had just paid for a premium, and Mr. Bland spoke up and said, why, I think that every man should have insurance to protect his family. He said, I have promised Gladys if she marries me that I will turn all my insurance to her. I said you ought to, that is why I just paid this premium is to protect my wife.

"*Q.* How long was that, if you remember, Mr. Car-

penter, when Mr. Bland made that statement before they were married?

"A. Why that was along in May that this—that I paid this premium.

"Q. Gladys says she was engaged just about three weeks before she married him, and that would be sometime before that?

"A. That would be somewhere along three or four weeks before the marriage.  *   *   *

"Q. At that time Mr. Bland himself made a statement if Gladys married him he would make all his insurance payable to her?

"A. Yes, he kind of chided me for complaining of the expense of keeping the policy up; spoke up frankly, said every man should carry life insurance.

"Q. To protect his family?

"A. Yes, sir."

Mrs. Carpenter was present at this conversation and testifies with reference to it as follows:

"My husband came in in the afternoon and Mr. Bland was there.

"Q. That was Mr. Edward G. Bland?

"A. Mr. Edward G. Bland had called, and Mr. Carpenter came in and he held an insurance policy in his hands.

"Q. Who came in?

"A. My husband, E. E. Carpenter, came in with this insurance policy in his hands and the remark was made it costs terrible to keep up these insurance policies.

"Q. Who made that remark?

"A. Mr. Carpenter. Well, I spoke up and I said, well, I am glad that you have it, my dear, because if anything should happen to you it would insure me of something, and Ed. Bland spoke up and he said, yes, every man should carry an insurance for his family, and in case that I marry Gladys my insurance will be made to her, my insurance will be made to her."

While plaintiff was prohibited by the statute from testifying to facts equally within the knowledge of the deceased, she was not prohibited by the statute from testifying to conversation she had with the father and

mother not in his presence. Considering such testimony, together with the other testimony in the case, we are satisfied that the father and mother both knew of Edward's agreement to transfer the insurance and both acquiesced in it. Indeed the record discloses that these parents, and particularly the mother, were extremely anxious that their son should marry the plaintiff and upon all appropriate occasions urged the marriage. Both impressed upon her and her relatives how much more advantageous it would be to her than an alliance with the young man in the south and overlooked no occasion to point out to her the material advantage a marriage to their son would bring to her. We are satisfied upon this record that deceased agreed with plaintiff to make her beneficiary in these insurance policies if she would marry him and that the individual defendants knew of and acquiesced in such agreement.

May the court of equity decree specific performance of this antenuptial contract? Through a long line of authorities it has been held by this court that in cases cognizable by a court of equity specific performance of antenuptial agreements may be decreed. Among them see *Thompson* v. *Tucker-Osborn,* 111 Mich. 470; *Dakin* v. *Dakin,* 97 Mich. 284; *Carr* v. *Lyle,* 126 Mich. 655; *Phillips* v. *Phillips,* 83 Mich. 259; *Kundinger* v. *Kundinger,* 150 Mich. 630; *Carmichael* v. *Carmichael,* 72 Mich. 76 (1 L. R. A. 596). In the first of these cases we quoted with approval from the case of *Stilley* v. *Folger,* 14 Ohio, 610, 649, the following language:

"All supposed actual fraud may, therefore, be laid out of view. Why, then, should not this agreement be enforced? Antenuptial contracts have long been regarded as within the policy of the law, both at Westminster and in the United States. They are in favor of marriage, and tend to promote domestic happiness by removing one of the frequent causes of family disputes,—contentions about property, and especially al-

lowances to the wife.   Indeed, we think it may be considered as well settled at this day that almost any *bona fide* and reasonable agreement, made before marriage, to secure the wife in the enjoyment either of her own separate property or a portion of that of her husband, whether during the coverture or after his death, will be carried into execution in a court of chancery."

An interesting case upon the question of the enforcement of the terms of an antenuptial agreement by a court of equity will be found reported in one of the early English reports (*Frederick* v. *Frederick*, 1 Peere Williams, 710).   One Frederick had agreed in the antenuptial agreement that he would within a year after the marriage become a freeman of London.   By custom one-third of the personal property of a freeman of London went to his widow.   After the marriage Mr. Frederick did not become a freeman of London, although he lived some 40 or 50 years thereafter. Upon his death specific performance of the antenuptial agreement was sought.   Among the objections urged to granting such decree was that Mr. Frederick was then deceased and could not be made a freeman after his death.   This objection was disregarded by the court and it was said:

"It is the substance and the chief end of the agreement, that equity will enforce, viz., that the widow and children should have their thirds of the personal estate, which is not impossible to be performed.   This, though Mr. Frederick be dead, a court of equity may, and, I think, ought to see executed.   *   *   *

"Upon the whole matter, Mr. Frederick having upon good consideration made the agreement to become a freeman of London within a year, and having survived that year, he shall in equity be taken for a freeman, and his personal estate distributed accordingly, viz., one-third to the wife, another third to the children, and the will to operate only on the dead man's third."

It is suggested by defendant's counsel that the

parties to the marriage were young people, that presumptively the marriage was due to their mutual affection and the antenuptial agreement was not its procuring cause. We do not understand the rule to be that to entitle a wife to specific performance of an antenuptial agreement that her marriage must be prompted solely by mercenary motives. There was, no doubt, affection between plaintiff and deceased, but he entered into certain agreements with her in consideration of the marriage and upon these engagements she relied; while there probably was mutual affection this does not excuse deceased from the performance of his agreement with her. The marriage was a performance on her part. She was entitled to performance on his part.

Counsel for the defendant rely upon the following cases: *Coston* v. *Coston,* 145 Mich. 390; *Ancient Order of Gleaners* v. *Bury,* 165 Mich. 1 (34 L. R. A. [N. S.] 277) ; *Supreme Lodge K. of H.* v. *Nairn,* 60 Mich. 44; *Grand Lodge A. O. U. W.* v. *Fisk,* 126 Mich. 356; *Ladies' Auxiliary A. O. H.* v. *Flanigan,* 190 Mich. 675. Only one of these cases, the first one, involves the enforcement of an antenuptial agreement and that case was disposed of as one of fact. Without reviewing all these cases it will suffice to state that in the main they deal with provisions and regulations for the change of beneficiaries found either in the policies or the laws of the order and hold that such provisions and regulations must be complied with in order to permit a change of beneficiary. In the instant case no such question is involved. There is no claim made that any provisions of this policy prevented a change of beneficiary by the act of the deceased alone.

Plaintiff's counsel insists that defendants are equitably estopped from asserting any claim to these policies of insurance. Defendant's counsel, while denying that an equitable estoppel is made out, in-

sist that it is not pleaded, and therefore may not be relied upon. We do not pass upon either claim as we are satisfied that the case should rest on the broader ground that defendants have no vested interest in the policies. In *Schiller-Bund* v. *Knack,* 184 Mich. 95, Mr. Justice STONE, speaking for the court, said:

"We have examined the cases cited in the briefs of counsel, and are unable to find a case in which it was held there was a vested right passing to the beneficiary where there was not an express contract founded upon valuable consideration (moving to the assured) between the assured and the beneficiary."

Mr. Justice OSTRANDER, speaking for the court in *Modern Brotherhood of America* v. *Hudson,* 194 Mich. 124, said:

"The right of a holder of a certificate, of the nature of the one before us, to change his beneficiary at pleasure, is one which this court has uniformly upheld, and the right ought not to be and will not be denied unless it is plain that the beneficiary named in the certificate has by contract and by performance acquired a vested interest in the certificate and fund."

We do not overlook the fact that Mr. Bland in his testimony stated that his son said to him that the beneficiaries would not be changed. This testimony was of a conversation with deceased and therefore equally within his knowledge. Assuming, but not deciding, that it was properly in the case, it falls far short of establishing a contract founded upon a valuable consideration *moving to the assured* that the beneficiaries should never be changed. That Mr. Bland did not himself regard it of binding force upon his son is evidenced by his testimony that while he occasionally let his son have money to pay premiums when he was short of funds, he "never wanted it back." If any payments were made by him they were purely voluntary ones and not made in pursuance of any contract existing between him and his son.

We are persuaded that under the facts as found by us and the laws applicable thereto, plaintiff is entitled to the proceeds of these insurance policies now in the hands of the court on the cross-bill of interpleader filed by defendant insurance company. See *Grand Lodge A. O. U. W.* v. *Child,* 70 Mich. 163. The decree of the court below will be vacated and one here entered in accordance with this opinion. Plaintiff will recover costs of both courts against the contesting defendants.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.