NEW YORK LIFE INSURANCE CO. v. COOK.

1. INSURANCE—CHANGE OF BENEFICIARY EFFECTED WHERE INSURED
DID ALL HE COULD TO MAKE CHANGE.

Where insured made an assignment of the policy to his
father on one of insurer's blanks, and requested it to
change the beneficiary from his wife to his father, ex-
plaining that he could not comply with the condition
requiring that the policy be sent in for indorsement be-
cause his wife, from whom he was separated and against
whom divorce proceedings were pending, would not sur-
render it, the law will regard the change as made, although
at the time of his death the insurer had not complied
with his request for said change, since insured had done
all that he could to comply with the conditions with
reference to the change of beneficiary.

2. SAME—WIFE HAS NO VESTED INTEREST BY REASON OF BEING
NAMED BENEFICIARY.

A wife has no vested right in the insurance policy of her
husband merely by reason of the fact that she was named
beneficiary therein.

3. SAME—WIFE ASSERTING VESTED INTEREST IN HUSBAND'S POLICY
HAS BURDEN OF ESTABLISHING HER CASE.

In view of the rule that unless there is a valuable con-
sideration moving to assured from the beneficiary the
latter has no vested right in the policy, a wife claiming
a vested right in her husband's policy has the burden of
establishing her case.

4. SAME—VESTED INTEREST—VALUABLE CONSIDERATION NOT ESTAB-
LISHED BY MERE PROMISE TO MAKE WIFE BENEFICIARY.

Testimony that a husband agreed to name his wife as
beneficiary in his insurance policy because he felt it to
be his duty to do so falls short of establishing that she
was so named as beneficiary in consideration of her prom-
ise to marry him.

[1]Life Insurance, 37 C. J. § 350; [2]Id., 37 C. J. § 345; [3]Id., 37
C. J. § 356; [4]Id., 37 C. J. § 356; 36 A. L. R. 771; 14 R. C. L. 1393;
6 R. C. L. Supp. 891.

5. Same—Husband May Replace Wife as Beneficiary in Policy
   in Absence of Showing That She Has Vested Interest.
   A husband has a legal right to change the beneficiary in
   his policy from his wife, from whom he is separated and
   against whom divorce proceedings are pending, to his
   father, who is caring for him in his illness, in the absence
   of a showing that the wife has a vested interest in the
   policy.

Appeal from Kent; Perkins (Willis B.), J.    Submitted October 13, 1926.    (Docket No. 84.)    Decided
January 3, 1927.

Bill of interpleader by the New York Life Insurance
Company against John Cook, Ann M. Cook, and
Jeanette Cook to determine the rights to the proceeds
of certain insurance policies.    From a decree for defendant Jeanette Cook, defendants John and Ann M.
Cook appeal.    Reversed, and decree entered for appellants.

*Arthur F. Shaw,* for appellants.

*Linsey, Shivel & Phelps,* for appellee.

Bird, J.    On February 14, 1923, Oswald J. Cook
took out two life insurance policies in the plaintiff
company, one for $2,000 and one for $1,000, payable
to his mother, Marguerite Cook, in the event of his
death.    Both policies contain the following privilege
of changing the beneficiary:

"Change of Beneficiary—The insured may at any
time, and from time to time, change the beneficiary,
provided this policy is not then assigned.    Every
change of beneficiary must be made by written notice
to the company at its home office accompanied by the
policy for indorsement of the change thereon by the
company, and unless so indorsed the change shall not
take effect.    After such indorsement the change shall
relate back to and take effect as of the date the insured

---

[5]Life Insurance, 37 C. J. §§ 345, 349; 3 L. R. A. (N. S.) 478;
39 L. R. A. (N. S.) 370; 14 R. C. L. 1381; 3 R. C. L. Supp. 393.

signed said written notice of change whether the insured be living at the time of such indorsement or not, but without prejudice to the company on account of any payment made by it before such indorsement. In the event of the death of any beneficiary before the insured the interest of such beneficiary shall vest in the insured."

Four or five months after taking out these policies Oswald J. Cook was married to defendant Jeanette Cook, and in pursuance of said privilege he changed the beneficiary named in the $2,000 policy to his wife. Soon after he changed the beneficiary named in the $1,000 policy to his sister, Ann M. Cook, one of the defendants. About a year after taking out these policies he became ill and was taken to the tuberculosis hospital in Grand Rapids, where he remained about eight months. He was removed to his wife's father's home for a short period, and was then taken to his own father's home, where he was cared for until he died, on November 8, 1925. In May, 1925, he filed a bill of complaint for a divorce. The testimony therein was later taken and submitted, but the trial court had not decided the case when he died. In March, 1925, Oswald J. Cook requested his wife to deliver the policies to him, but she refused to surrender them until he recovered. Later he procured a writ of replevin to obtain them, but the writ failed to produce them. Oswald J. Cook then made an assignment of the $2,000 policy to John Cook, his father, on one of the company's blanks, and explained to it that the beneficiary would not surrender the policy, and, therefore, he could not send it, and requested a change in the beneficiary from his wife to his father. This was not complied with before he died.

Upon the death of the insured the plaintiff admitted liability, but was in doubt as to which beneficiary was legally entitled to the fund, and, therefore, filed this bill of interpleader to obtain the advice of the

court.    The wife, Jeanette Cook, claims the policy was given to her in such a way as that it amounts in law to an absolute assignment.    The sister claims the $1,000 policy was assigned to her to secure a loan of $500 she made to her brother.    The father claims that Oswald J. Cook did everything within his power to assign the policy to him, and, therefore, he is entitled to the proceeds of the $2,000 policy.    The trial court took the view of Jeanette Cook, and held that she was entitled to the proceeds of the policies, less the $500 to Ann M. Cook.

1. The proofs seem to indicate that the insured, Oswald J. Cook, made every reasonable effort to get possession of his policies so that he could comply with the conditions with reference to a change of beneficiary.    Under such circumstances this and other courts have held that the law would regard that as done which ought to have been done, and regard the change as having been made (14 R. C. L. p. 1393, § 556).    Speaking of a combination of facts similar to those presented here, the authority cited says:

"If the member does all that is within his power to effect a change in beneficiaries, and fails to surrender the certificate and have a new one issued only because such certificate is in the possession of the original beneficiary, who refuses to surrender it, the beneficiary thus thwarting the wishes of the member will not be allowed to profit thereby, and his rights to the proceeds of the certificate are subordinate to those of the new beneficiaries selected by the member, and to whom the issue of a proper certificate was prevented only by the act of the original beneficiary in refusing to surrender the old certificate."

This text is supported by the Michigan cases: *Schiller-Bund* v. *Knack,* 184 Mich. 95; *Grand Lodge A. O. U. W.* v. *Kohler,* 106 Mich. 121; *Modern Brotherhood of America* v. *Hudson,* 194 Mich. 124; *Quist* v. *Insurance Co.,* 219 Mich. 406.    Other authorities are 36 A. L. R. 771; 37 C. J. p. 585.    We think the

showing sufficient to entitle John Cook to the proceeds
of the $2,000 policy, so far as this question is in-
volved.

2. But counsel argue that the situation was such in
the present case as to amount to an absolute assign-
ment of the policies at the time of marriage and in
consideration of marriage.   If they are right on this
proposition, then the wife is entitled to the fund.
Jeanette Cook would have no vested interest in the
policies by reason of being named therein as bene-
ficiary.   *Union Mutual Ass'n* v. *Montgomery,* 70
Mich. 587 (14 Am. St. Rep. 519) ; *Metropolitan Life
Ins. Co.* v. *O'Brien,* 92 Mich. 588; *Schiller-Bund* v.
*Knack,* 184 Mich. 95; *New Era Ass'n* v. *Kuyat,* 191
Mich. 646; *Modern Brotherhood* v. *Hudson,* 194 Mich.
124; *Hooton* v. *Hooton,* 230 Mich. 689.

In *Schiller-Bund* v. *Knack, supra,* it was said:

"We have examined the cases cited in the briefs of
counsel, and are unable to find a case in which it was
held there was a vested right passing to the bene-
ficiary where there was not an express contract
founded upon valuable consideration (moving to the
assured) between the assured and the beneficiary."

Under this rule we think Jeanette Cook must estab-
lish her case.   Her claim of assignment was made by
the testimony of her mother, the material part of
which is:

"Previous before their marriage he said that there
was an agreement in the marriage when we were talk-
ing about them getting married, he said, 'Well, he
was insured for $4,000 and that there was an agree-
ment with the marriage that he would turn over to
her as soon as they were married, to be her property
forever.'   *   *   *   On a Sunday noon, shortly after
they were married, I was in the kitchen getting dinner,
and then he came to me and says, 'Well, mother, I
have had the policies made over to Jen.'   He said
part of it is to go to Anne, and she certainly will
give Jen the other $500.   He said she was to have

the policies forever, it was her property. He says as long as she lived they belonged to her, he said, 'they are hers.' He said, of course, he felt it his duty he said it was his wife and he said before he was married he had it made out to his mother, but after his marriage he felt it his duty to have it made out to her after his marriage. He said, 'well, you know it was an agreement in the marriage that it was to be turned over to her, and,' he says, 'now I have done it.' "

Counsel argue from this testimony that the transfer of the policies to her was in consideration of marriage. We have not reached that conclusion from all of the proofs. The testimony relied upon shows that there was an agreement that Jeanette Cook should be made the beneficiary in the policies. There is nothing to indicate that the transfer was to be made in consideration of marriage, or that she was influenced by it, nor is there any proof that the transfer figured at all in their agreement to marry, but there is proof that after the marriage he felt it his duty to have her made the beneficiary. The most that can be made of the agreement was that he agreed to make her the beneficiary, not because of her agreement to marry him, but from a sense of duty. This does not satisfy the rule "that a vested interest must result from an express contract for a valuable consideration." There is a considerable difference between making a wife the beneficiary of an insurance policy because she was his wife, and making her the beneficiary in order to get her consent to become his wife. On this question counsel rely on *Bland* v. *Bland*, 212 Mich. 549. We do not think that case is in point because in the case cited it clearly appeared that the promise to assign the policy was a consideration for the marriage.

We have had some misgiving as to the good faith of her claim because (1) She made no claim in the divorce proceeding that she had any vested interest in the policies. (2) She made no claim that she had

any interest in the policies at the time the husband demanded them.   (3) She made no claim of any interest, other than as custodian, when the officer sought to take them on the writ of replevin.   (4) She makes no claim in her answer in this proceeding that the policies were given to her in consideration of marriage.   (5) It is obvious that the insured did not understand that he had disposed of the policies so he could not change the beneficiaries.   (6) Her testimony in this case and her admission that she testified falsely in the divorce case, with reference to the whereabouts of the policies, do not strengthen our confidence in the good faith of her claim.

We conclude that Oswald J. Cook promised to, and did, make his wife the beneficiary of the policy in the same way that most men do to protect their wives against want in the event of death.   They lived together only a short time.   Trouble arose and he filed a bill for divorce.   This altered the situation and also altered his mind, and he changed the beneficiary to one who was caring for him in his losing fight with the inevitable.   We think he had a legal right to do this.

A decree will be made giving the father, John Cook, the proceeds of the $2,000 policy.   The proceeds of the $1,000 policy will be given to the sister, Ann M. Cook.  ` The proofs on the question whether Oswald changed his instructions to Ann with regard to paying $500 to Jeanette are too meager for us to make a holding on that question.   The trial court will determine that question after taking further proofs.

The decree will be reversed, and one will be entered in keeping with this opinion.

SHARPE, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.