## HALLETT v. TAYLOR.

1. INSURANCE—BENEFICIAL ASSOCIATIONS—CHANGING BENEFICIARY
   —VESTED INTEREST—CONTRACT RIGHTS.
   While the general rule is that assured in a mutual benefit
   policy may change the beneficiary at pleasure, yet a bene-
   ficiary may acquire, by agreement with the assured, and
   by performance of the agreement, a vested interest in
   the policy or its proceeds, precluding assured from chang-
   ing the beneficiary.[1]

2. SAME—EXPRESS CONTRACT—EVIDENCE—SUFFICIENCY.
   Evidence *held*, insufficient to establish an express contract
   precluding assured from changing the beneficiary from
   plaintiff, her sister, to defendant, her husband.

3. SAME—CHANGING BENEFICIARY—DURESS.
   Evidence *held*, insufficient to sustain the charge that the
   change was made under duress.

4. SAME—PROMISE TO PAY PREMIUMS—VESTED INTEREST—CON-
   TRACT RIGHTS.
   A promise to pay the premiums is insufficient to create in
   the beneficiary a vested interest in the proceeds of the
   policy precluding the assured from changing the bene-
   ficiary.

5. SAME—CONSIDERATION—MEMBERSHIP IN LOCAL LODGE.
   The contention that a consideration moved to the assured
   by the continuance of her membership, entitling her to
   the social privileges of the local lodge by reason of the
   payment of dues and premiums by plaintiff, cannot be
   sustained, since this consideration would be present in
   every case where a beneficiary paid the dues and premiums.

Appeal from Kent; Perkins, J. Submitted January
21, 1919. (Docket No. 77.) Decided May 29, 1919.

Bill by Anna Hallett against L. D. Taylor to estab-
lish her claim to the proceeds of a policy of insurance.
From a decree for plaintiff, defendant appeals. Re-
versed.

[1]See notes in 12 L. R. A. (N. S.) 1207; 33 L. R. A. (N. S.) 773.

*Irving H. Smith* (*C. C. Coburn,* of counsel), for plaintiff.

*Smedley & Linsey,* for defendant.

OSTRANDER, J.   Ella Taylor, who was sister of the plaintiff and wife of the defendant, was insured by the Equitable Fraternal Union, the certificate naming the defendant, her husband, as beneficiary, the certificate being dated October 10, 1906.   That certificate was surrendered and canceled and a new certificate insuring the life of the said Ella Taylor was issued by the said Equitable Fraternal Union, in which the plaintiff was named as beneficiary; this in February, 1908. Still later, upon the application of Mrs. Taylor, and in August, 1915, the beneficiary was again changed to the defendant, husband of the insured.   The assured died in April, 1917.   The plaintiff filed her bill in this cause, making the beneficiary, Taylor, and the insurer parties defendant, claiming the proceeds of the certificate.   The insurer paid the money into court, and is not concerned with the result of the litigation.

The learned trial judge filed an opinion, the pertinent portions of which are here set out:

"The disputed and controlling question in this case is as to what took place between the assured and the plaintiff before the plaintiff was formally made beneficiary in this policy and the reasons that led the assured to make such change.

"The plaintiff claims, and there is competent testimony to support such claim, that in a conversation with her sister, at which the defendant Taylor was present, it was stated by the deceased, in substance, that her husband, the defendant and beneficiary, would no longer keep up the payments on this policy; that she was anxious to have the payments kept up so that she could receive the social advantages the maintenance of the policy would give her.   That if the plaintiff would agree to make the payments and keep them up she would have her named as sole beneficiary and

would not thereafter change the policy in this respect. Plaintiff claims that later she agreed to this proposition; that pursuant to such agreement the policy was changed and she was named as beneficiary; that she thereafter paid in advance the premiums and assessments until the beneficiary was later changed without her consent and the company would no longer accept payments from her.

"The defendant denies this agreement and claims that no such conversation took place as claimed by plaintiff. He claims that the payments made by the plaintiff on this policy were voluntarily made and that the right of the assured to change the beneficiary at any time she chose was never limited or abrogated by any agreement on her part made with the plaintiff.

"The change of the beneficiary from the defendant, Taylor, to the plaintiff, in 1908, while the assured was still in good health; the friendly relations existing between the assured and her sister, the plaintiff, until shortly before the change of the beneficiary to the defendant, Taylor, in 1915; the prompt payment of the premiums and assessments by the plaintiff during all these years; the fatal disease which later attacked assured, making certain her early death; the change of the beneficiary to the defendant while assured was in feeble health, and the refusal of the plaintiff to deliver up the policy which had been delivered to her on request, all convince me that the plaintiff's claims are true—that she made these payments with the express understanding and agreement with the assured that she should be made the sole beneficiary. She has complied with her part of this agreement and has thereby acquired a vested interest in this policy."

In accordance with the conclusion announced, a decree was entered.

Counsel do not disagree about the general rule that in such cases the insured may change the beneficiary at pleasure. They agree that a beneficiary may acquire, by agreement with the insured, and by performance of the agreement, a vested interest in the policy or certificate or the proceeds of it, precluding the in-

sured from making a change in the beneficiary. It is the contention of the plaintiff that she acquired, by ·agreement with the insured and by performance of the agreement on her part, a vested interest in the proceeds of this certificate. What is presented, then, is, first, a question of fact. What evidence is there to support the conclusion that there was an express contract founded upon a valuable consideration (moving to the assured) between the assured and the plaintiff? *Schiller-Bund* v. *Knack*, 184 Mich. 95, 105. Going first to the bill of complaint, we find it charged therein that the husband of the assured having declined to any longer pay the cost of maintaining the insurance, the assured—

"persuaded your oratrix to take upon herself the responsibility of paying all bills, premiums and special assessments in the future to become due upon the life insurance policy heretofore named, upon the life of said Ella Taylor, and that said Ella Taylor said to your oratrix that her husband, L. D. Taylor, refused to pay the special dues and premiums on said policy and said that same would go down unless your oratrix paid them; that said Ella Taylor said if your oratrix would pay said dues and premiums, she, the said Ella Taylor, would take out a new policy and have same issued to your oratrix, and that your oratrix thereupon agreed to pay said premiums and dues and to take said policy and have your oratrix named as beneficiary in said policy, and that thereupon and on,. to wit: the aforesaid 10th day of October, 1906" (February 19, 1908), "your oratrix and said Ella Taylor in accordance with said agreement and understanding,"

—did cause the new certificate to be issued, naming plaintiff as beneficiary, delivered it to plaintiff, who has since paid all premiums to January 1, 1916. It is further charged that—

"it was always the intention, desires and wishes of the said Ella Taylor that your oratrix be the benefi-

ciary of the policy covering her life, and that she should reap the benefits therefrom," and that "it was expressly and distinctly understood between herself and Ella Taylor, that she, your oratrix, was to be the sole owner of said policy and have all the benefits accruing thereunder."

The case which the bill then proceeds to state is that against the wishes and protests of the insured the defendant coerced her into making a change of beneficiary when she was ill, and by duress and unfair means brought about the issuing of the last certificate naming defendant as beneficiary.

We think that if all that is charged in the bill with respect to the understanding upon which the certificate was issued was admitted as true it would fall short of establishing an express contract between the insured and the plaintiff precluding the insured from changing her beneficiary. *Schiller-Bund* v. *Knack, supra; Modern Brotherhood of America* v. *Hudson,* 194 Mich. 124. See *Catholic Benevolent Legion* v. *Murphy,* 65 N. J. Eq. 60 (55 Atl. 497) ; *Leaf* v. *Leaf,* 92 Ky. 166 (17 S. W. 354, 854). What is charged in the bill, if admitted, goes little, if any, farther than the implication which the certificate upon its face and the payment of premiums by the beneficiary give rise to. It is, of course, wholly unimportant what the motive of the wife, or of defendant, was in causing the last change to be made, if the insured had the right to make it, and the evidence fails, we think, to sustain the charge that the change was made under duress.

The testimony for the plaintiff appears to somewhat overrun the charge made in the bill. A witness testified:

"In the year 1908, Mrs. Hallett was living in Wisconsin, and that year she came to visit me in Grand Rapids. I went with Mrs. Hallett to visit Mrs. Taylor in Coopersville in the fall of 1908. We were there

all day and had dinner at Mrs. Taylor's place. Mr. Taylor, Mrs. Taylor, Mrs. Hallett and myself were present at dinner time. On that day I had some conversation with Mrs. Taylor relative to the insurance of the Equitable Fraternal Union. I heard some conversation that day between Mrs. Taylor and Mrs. Hallett in reference to naming Mrs. Hallett as the beneficiary in this policy of insurance.

"I heard Mrs. Taylor say that they didn't want to carry this any more, they didn't want to pay for it any more, because Mr. Taylor could use his money for something else, and she asked her sister to take it, and her sister hesitated, and then we went to the dinner table and the conversation was resumed, and we were all talking about it, Mr. and Mrs. Taylor and all of us. Mrs. Hallett still hesitated on taking it, and Mr. Taylor said that if she would pay the premium on that, that he never would change it.

"Q. What did Mrs. Taylor say at that time?

"A. She wanted her sister to have it.

"Q. What, if anything, was said about the reason for her desiring to continue this policy?

"A. She wanted the sociable side of it there at Coopersville.

"Q. Just what did she say about it, do you recall?

"A. She said the town was small and she didn't have no place to go, and she would like to keep it up.

"Q. What, if anything, did Mrs. Taylor say about the beneficiary, if Mrs. Hallett would take it?

"A. She said she never would change it, Mrs. Hallett could always have it.

"Q. What did Mrs. Hallett say?

"A. She hesitated again, and then when Mr. Taylor said she could always have it, he would never change it, why she said, 'all right.'"

On cross-examination the witness said:

"I was living on Ellsworth avenue in Grand Rapids the time that Mrs. Hallett came here to visit me from Wisconsin. It was in the fall of 1908.

"Q. How do you know it was 1908?

"A. Because I moved in the flat in 1906, and it was two years following.

"She visited me for one day, and the next week we went to Coopersville. I was there one day.

"*Q.* What month was that, do you say?

"*A.* That was in September.

"*Q.* September, 1908?

"*A.* Yes.

"*Q.* You are sure about that?

"*A.* I surely am."

As the certificate which named plaintiff beneficiary was issued in February, 1908, the testimony of this witness must be viewed with some caution, because she testifies to an understanding arrived at six months or more after the certificate was issued.

The learned trial judge had the benefit of seeing the witness, and we disagree with him about the weight to be given testimony only after reflection and an attempt to properly value the testimony. We are not satisfied that the preponderance of the evidence sustains the fact, not charged in the bill, that there was a promise made by the assured to the plaintiff that the beneficiary would never be changed. Beyond this, it should be said that this court has never held that a contract between the insured and the beneficiary creating a vested interest in the beneficiary in the proceeds of the certificate may be made by the promise of the insured, relied upon by the beneficiary, that if the beneficiary paid the premiums the beneficiary would never be changed; nor are we now prepared to so hold.

It is contended that a consideration moving to the assured was the continuance of her membership in the insuring association which entitled her to social privileges with other local members of the association. It is matter of common knowledge that a large number, if not all, of fraternal organizations which insure the lives of members have a lodge system and that they cultivate sociability among members. The right to attend the lodge goes along with membership in

the organization. This right, and therefore this consideration, would be present in every case where a beneficiary paid the dues and premiums. The contention was refused in *Modern Brotherhood of America v. Hudson*, 194 Mich. 124, 131, 132, and for reasons there stated we must affirm the conclusion there reached.

We are constrained to reverse the decree of the court below and to enter one here for the defendant, the beneficiary named in the last certificate, with costs of this appeal.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.