**BANKERS LIFE CO. v. DOERING et al.**
Civil Action No. 807.

District Court, D. Minnesota,
Fourth Division.

Dec. 7, 1943.

Marshall S. Snyder and Neil Hughes, both of Minneapolis, Minn., for defendant Marie C. Doering.

Frank J. Collins and Ben R. Toensing, both of Minneapolis, Minn., for defendant Emily C. Buechler.

NORDBYE, District Judge.

The salient and pertinent facts are as follows: Dr. Raymond E. Doering, on or about October 25, 1930, obtained from the plaintiff a $2,000 life insurance policy in which his wife, Marie C. Doering, was the beneficiary. The insured died on January 13, 1942, and his wife and his sister, Emily C. Buechler, claimed the proceeds of the policy. The insurance company admitted liability, paid the amount of the policy into court, and a controversy herein exists between the two claimants. The general question involved is whether the insured made an effective change of beneficiary so that his sister and not his wife was entitled to the proceeds of the policy when he died. The portion of the policy with respect to change of beneficiary reads as follows:

"* * * The Insured * * * may designate a new beneficiary * * * by filing written notice thereof at the Home Office of the Company accompanied by the Policy for suitable indorsement thereon. Such change shall take effect when in-

dorsed on the Policy by the Company and not before * * *."

In February, 1941, the insured became seriously ill and was in the hospital from February 22, 1941, until March 14, 1941. The Doerings had been living together at one of the local hotels, but their marital relations had been estranged for some time prior to February, 1941. While the insured was in the hospital, his sister, Mrs. Buechler, came from North Dakota and was with him during a large part of the time when he was in various hospitals and elsewhere, until he died in January, 1942. On March 7, 1941, the insured executed a written change of beneficiary, the form having been furnished him by the company and which he sent to the insurer requesting that Emily C. Buechler, his sister, "be substituted as beneficiary in place of his wife, Marie C. Doering." It appears that, in response to a telephone call when the insured was in the hospital on March 5, 1941, he received from the insurance company the necessary form for change of beneficiary, and also had been directed in a communication from the insurance company to return the completed form with the policy. On March 10, 1941, the insurance company wrote to the insured as follows:

"This is to acknowledge receipt of your note and completed change of beneficiary form, but we are sorry to report that we do not have the policy. Our records indicate that the policy was returned to you on June 2, 1933, on which date the loan was completed.

"Under the circumstances we will ask that you make another thorough search for the policy. Then if you cannot find it, we will write to our Home Office requesting Lost Policy Affidavits which will have to be completed by yourself and the present beneficiary. Since the change will not be effective until stamped upon the policy we will ask that you give this your immediate attention."

On March 20, 1941, the following communication was sent from the insurance company to the insured:

"We wrote you under date of March 5th informing you that in order to change the beneficiary under your policy numbered above it would be necessary that we have the policy and the completed change of beneficiary form. Several days later we received the completed change form but you stated you could not locate the policy. Unfortunately such a change will not take effect until stamped upon the policy and we are, therefore, wondering whether you have as yet found it."

The change of beneficiary executed on March 7th failed to designate the policy number, and upon this defect being called to the insured's attention, he executed another change of beneficiary on March 22, 1941, which likewise designated his sister, Emily C. Buechler, as the new beneficiary. Apparently Doering did not find the policy; at least, it was not forwarded to the insurance company. But on April 1, 1941, he forwarded to the insurance company the following letter:

"This is to certify that Dr. R. E. Doering who owns policy number 897223 10 A 310 has kept this policy in a vault in the Northwestern National Bank. Marie C. Doering, the beneficiary of this policy, has deliberately taken the policy out of the safety deposit box and stored it in some other safety deposit box in the city which I am not able to find and under no circumstances should she be the beneficiary." This letter was signed in person by the insured and witnessed.

The records of the Northwestern Bank show that on February 24, 1941, the safety deposit box at the bank, to which both of the Doerings had access, was opened by Mrs. Doering, but she denies that the policy was in the safety deposit box at that time. She contends that about April 1, 1941, the policy was in a tin box in the Doering apartment, and that at or about that time she took the policy out of the container and put it into the hotel safe, where it remained, according to her testimony, until Doering's death. It appears that the insured was required to return to the hospital on March 24, 1941, and was operated on about April 2 or 3, 1941, and remained in the hospital until the latter part of April. From that time until he died, the insured was an ill man, receiving medical attention most of the time.

Mrs. Doering contends that she heard some time during the month of April, 1941, that her husband was going to change the beneficiary in the policy. She asserts that she was apprehensive that the policy might come into the hands of someone not entitled to its possession, and for that reason she removed it to the hotel safe. Undoubtedly, the insured never had posses-

sion of the policy during the time that he made out the forms for change of beneficiary, and the evidence and surrounding circumstances are very persuasive that when Mrs. Doering took possession of the policy, either putting it in the hotel safe, as she relates, or storing it in some other safety deposit box in the city, as the husband charged in his letter of April 1, 1941, she did so in order to prevent a change of beneficiary. After the insured was released from the hospital the first time, on or about March 14, 1941, he left the apartment in which he and his wife were living and moved into another apartment in the same hotel, where his sister lived with him and administered to him during his convalescence. He never lived with his wife after that time. A very significant episode which throws considerable light on the intention of Mrs. Doering to conceal the policy from her husband is to be noted in the letter which she mailed to the insurance company on or about April 26, 1941. The letter follows:

"Bankers Life Company,
"Des Moines, Iowa.
"Gentlemen:

"Dr. R. E. Doering who is insured under your policy No. 897 223 is seriously ill.

"As wife of the insured and the beneficiary under it I am informing you that I hold the said policy in my possession. For your information I am telling you that I have the policy so that you will make no loan or other changes in it without my written consent and accompanied with the said policy."

Furthermore, on cross-examination she testified as follows regarding this letter (pp. 28, 29, Record):

"Q. Now, showing you your letter of April 26, 1941, which has been admitted in evidence here, will you please read it to refresh your recollection? A. I have a copy of it, I think.

"Q. When you wrote that letter was it your intention to keep and retain that policy? A. My intention at that time was to keep anyone from the outside from having anything to do with it. I had heard many rumors around the hotel and I didn't want anybody else to have anything to do with it. Dr. Doering was seriously ill.

\* \* \* \* \*

"Q. Was it your intention to keep the policy in your possession at that time—is that correct? A. It was my intention to keep anyone else from having anything to do with it.

\* \* \* \* \*

"The Court: (To witness) I will ask you whether or not it was your intention to keep the policy—yes or no.

"The Witness: Yes.

"Q. Was it your intention to keep the policy for the purpose of preventing any change in beneficiary—answer yes or no. A. Well, yes."

That Dr. Doering did everything he could do to effect a change of beneficiary seems clear. Certainly, it is fair to find that the policy was inaccessible to him. Whether Mrs. Doering removed the policy from the bank vault as he alleged in his letter is not controlling. She concedes that in April, 1941, she put the policy in the hotel safe and thereafter kept it concealed from her husband with the intention of preventing any change of beneficiary. She admitted in her testimony that she was concerned that Mrs. Buechler might obtain possession of the policy. She did state on the witness stand, however, that if Dr. Doering had asked her for the policy she would have delivered it to him. This statement made at the trial, however, seems self-serving and entirely inconsistent with her conduct and acts during the time she knew that her husband was endeavoring to effect a change of beneficiary in the policy. It is quite evident from all the circumstances that she was aware that Doering had already taken steps to make his sister the new beneficiary. It is significant that she stated that she did not want Mrs. Buechler to obtain possession of the policy. Her failure to tell her husband of the removal of the policy to the hotel safe when she knew or had heard that he intended to change beneficiaries, her concealment of the policy, and her admission that she put it in the hotel safe for the purpose of preventing a change of beneficiary, together with her letter of April 26th, strongly tend to discredit her present gratuitous assertion as to what she would have done in the event her husband had asked her for the policy. The insured's letter of April 1st may not be evidence of all the recitals therein, but it is admissible in so far as it tends to indicate that the insured did not have possession of the policy, and that in addition it does indicate that he did not know where the policy was. This letter is a contemporaneous record or memorandum and strong-

ly tends to establish that, if the insured could have found the policy, or had been told about its location, he would have sent it on to the company.

If, therefore, this Court is correct in the premise that the insured failed to send the policy to the insurer and obtain an indorsement of a change of beneficiary thereon because of his wife's acts or unwillingness to act, then what effect should be given to that which was done by the insured in his endeavors to effect a change of beneficiary?

In Brajovich v. Metropolitan Life Ins. Co., 189 Minn. 123, 248 N.W. 711, the Minnesota Supreme Court held unanimously that the insurer's failure to indorse the change of beneficiary upon the policy in that case prior to the insured's death did not prevent an effective change of beneficiary. Justice Olsen stated (page 127 of 189 Minn., page 713 of 248 N.W.): "The indorsement of such change upon the policy was but a formal or ministerial act which the insurance company, under this policy, was obligated to do." The Doering policy provision which provides for the indorsement of the change upon the policy is similar to the provision in the Brajovich policy. See, also, Hall v. Prudential Ins. Co., 132 Misc. 162, 229 N.Y.S. 228, and Quist v. Western & S. L. Ins. Co., 219 Mich. 406, 189 N.W. 49 (cited in the Brajovich case). These cases, like the Brajovich case, recognize that the indorsement of the change of beneficiary on the policy is only a ministerial act, the absence of which does not prevent an effective change of beneficiary. It seems clear, therefore, that the insurance company's failure to indorse the change on the Doering policy prior to the insured's death does not mean that no effect can be given the insured's efforts to effect a change of beneficiary.

The real legal problem in this case pertains to the policy's requirement that the insured *send the policy* to the company with written notice of change of beneficiary. In other words, did Dr. Doering's failure to send the policy to the company nullify his endeavors to change the beneficiary?

This action is one "in equity or one to which equity principles and rules apply." Brajovich v. Metropolitan Life Ins. Co., supra, 189 Minn. at page 129, 248 N.W. at page 714; Knappen v. Locomotive Eng. Mut. L. & A. Ins. Co., 166 Minn. 328, 207 N.W. 641.

37 Corpus Juris 585, Sec. 350, states:

"* * * On the principle that equity regards as done that which ought to be done, the courts will give effect to the intention of insured by holding that the change of beneficiary has been accomplished where he has done all that he could to comply with the provisions of the policy, as where he sent a proper written notice or request to the home office of the company but was unable to send the policy by reason of circumstances beyond his control, as where it had been lost, or was in the possession of another person who refused to surrender it or was otherwise inaccessible; * * *."

The note in 36 A.L.R. 771 sets forth the following:

"It is uniformly held that where insured's failure to complete a change of beneficiary in his policy, before his death, by a return of the policy to the insurer, was caused by a refusal of the beneficiary named therein to surrender the policy to him, his efforts, if otherwise in substantial compliance with the requirements imposed by statute or contract, will—at least, as between the persons claiming as beneficiaries—be given effect, and the equitable right of the person designated by him as the new beneficiary will prevail over the strict legal title appearing on the face of the policy." (Citing cases.)

Brajovich v. Metropolitan Life Ins. Co., supra, 189 Minn. at page 128, 248 N.W. 711, appears to place Minnesota in accord with the majority rule stated by these quotations. True, the Brajovich case dealt only with the failure or refusal of the insurance company to act; it did not deal with the failure or refusal of a third person who was not a direct party to the insurance contract. The latter situation is the one which is present in the instant case. However, in support of its application of the equitable maxim that equity will consider as done that which ought to be done, the Minnesota court cited cases like McDonald v. McDonald, 212 Ala. 157, 102 So. 38, 36 A.L.R. 761; Quist v. Western & S. Life Ins. Co., 219 Mich. 406, 189 N.W. 49; and New York Life Ins. Co. v. Cook, 237 Mich. 303, 211 N.W. 648. These cases (expressly or impliedly) apply to situations like the instant one the equitable maxim which Justice Olsen applied (in reliance on them) to the situation in the Brajovich case.

In fact, the McDonald case is very similar to the instant case. There, as here, the insured's estranged wife was the beneficiary and in possession of the policy. Likewise, the insured in that case sent the insurance company the written notice required for a change of beneficiary, but he did not send the policy. He did not ask his wife for the policy. He stated to the insurance company that his wife would not relinquish the policy even if he asked her for it. After his death, the insurance company paid the money into court and an action like the instant one resulted. The Alabama court held that his wife would not have relinquished the policy if the insured had asked her for it, and therefore his acts were sufficient to effect a valid change even though the policy was not sent to the company with the written notice of the change. The Quist and Cook cases involved situations in which the wife, who was the beneficiary, actually refused to relinquish the policy for a change of beneficiary.

It would seem that, by relying upon such precedents, the Minnesota Supreme Court necessarily must have recognized that, in so far as the application of the equitable maxim was concerned, there was no reason for distinguishing between its application to the situation present in the Brajovich case and those present in the McDonald, Quist, Cook, and other cases upon which it relied, and which are similar to the fact situation in the instant case. At least, this Court has not been referred to any Minnesota cases which cast any doubt upon this conclusion.

Further, as the Alabama court points out in the McDonald case, 212 Ala. at page 142, 102 So. at page 41, 36 A.L.R. at page 768:

"The insured gave the company notice in writing that he desired to have the name of the beneficiary changed, and requested that such change be made. Thereupon if not immediately and absolutely, after the lapse of a reasonable time, with no reason forthcoming why insured's nominee should not be substituted in the policy, insured was entitled to such substitution, and a court of equity, if the insured desired to have the policy changed for future security, would have made a decree accordingly. But the change in the

instrument, though suggested by prudence, was not necessary to the rights which insured desired to secure for his nominees * * *."

The insurance company has paid the proceeds of the policy into court. It claims no right to any of the proceeds now on deposit. The facts and circumstances, as noted above, compel the view that the insured did everything that he could to effect a change of beneficiary, and that he was thwarted in his attempt to send the policy to the company and have it perform its ministerial act by reason of the studied design and plan of one of the claimants herein. Clearly, if equity intends to give effect to the intention and desire of the insured and recognizes that such intent and the performance of the company's ministerial act, prior to the insured's death, was frustrated by the beneficiary named in the policy, Mrs. Buechler should be considered as being entitled to the proceeds of the policy.

It cannot be denied that the insured had the right to the possession of the policy and his wife had no right to hold it from him. He had the right to change the beneficiary without her consent. Indeed, it is entirely fair to find that it would have been futile for the insured to have requested possession of the policy from his wife under the circumstances. She should not be permitted to benefit by her wrongful conduct. If equity would take cognizance of the situation and its aid could be invoked prior to the insured's death, no convincing reason appears why equity should not at this time secure for the insured's last-named beneficiary her rights to the proceeds of the policy.

The Court concludes, therefore, that applying well-known equitable principles, the acts of the insured, Dr. Doering, should be given effect and that these acts were sufficient to change the beneficiary of his life insurance policy, so that the defendant Emily C. Buechler is entitled to an order and judgment of this Court instructing the Clerk to pay the proceeds of the policy to her.

Findings of fact and conclusions of law consistent herewith may be presented by counsel for defendant Emily C. Buechler upon five days' notice.

An exception is allowed.