GUTHERIE *v.* THOMAS BUILT HOMES, INC.

1. EVIDENCE—PAROL EVIDENCE—BILLS AND NOTES—HOLDER IN DUE COURSE—ADMISSIBILITY.

Parol evidence concerning the facts and circumstances surrounding a transaction may be admitted for the purpose of determining whether a party to the transaction is a holder in due course (MCLA § 440.3307).

2. EVIDENCE—PAROL EVIDENCE RULE—BILLS AND NOTES—HOLDER IN DUE COURSE.

Parol evidence that the maker of a promissory note stated that he would not be bound by the note if the check he had received from the lender was bad and evidence that the statement was made in the presence of the person to whom the note was negotiated was admissible where the statement was offered to prove that the person to whom the note had been negotiated was not a holder in due course.

Appeal from Wayne, Thomas J. Foley, J. Submitted Division 1 November 6, 1970, at Detroit. (Docket No. 6577.) Decided January 18, 1971.

Complaint by Melvin C. Gutherie against Thomas Built Homes, Inc., Joe Panackia, and Roy H. Brown for the amount due on a note. Summary judgment for plaintiff against Roy H. Brown for the principal amount of the note. Verdict for defendants Panackia and Thomas Built Homes, Inc. Verdict for defendant Roy H. Brown on the issue of interest owed. Plaintiff appeals. Affirmed.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 12 Am Jur 2d, Bills and Notes § 1261.

*Gerald Curtis,* for plaintiff.

*Robert L. Loesch,* for defendants Thomas Built Homes, Inc. and Joe Panackia.

Before: McGREGOR, P. J., and HOLBROOK and O'HARA,* JJ.

O'HARA, J. The *dramatis personae* of this litigious drama are as follows:

Melvin Gutherie (plaintiff-appellant) is a lumber dealer. He does his banking, or at least part of it, at a branch of the Bank of the Commonwealth. Paul Custer is the manager of the branch bank (not a party litigant). Joe Panackia is president of Thomas Built Homes, Inc. (a named defendant, as is Joe Panackia personally). Roy H. Brown, doing business as Roy H. Brown & Company, is a named defendant. Panackia, Thomas Built Homes, and Brown are sued jointly and severally.

Trial was to a jury. The court granted a partial summary judgment, in favor of plaintiff Gutherie, against defendant Brown, for $21,000. The jury returned no cause of action verdicts as to Panackia and Thomas Homes.

It all came about this way. Mr. Panackia and his company were engaged in building homes and property in which defendant Brown had some apparent developmental interest, which, if successful, would inure to Brown's financial benefit. This latter fact— Brown's interest in the project—was elicited largely by bench questioning on oral argument. Brown filed no brief, and those of appellant and appellees Pan-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ackia and Thomas Homes made no mention of it in the statement of facts.

Understandably, the panel, absent such information, was hard put to understand Brown's interest in helping Panackia and Thomas to get the $25,000 loan, which furnished the basis for the whole complicated transaction.

Panackia and Thomas Homes wanted and apparently needed $25,000. Brown offered assistance. He brought Panackia to the bank and introduced him to Custer. Custer explained that since Panackia was not a customer of the bank, the loan could not be arranged through the regular bank loan procedure. Brown thereupon made known to Custer that he, Brown, would be willing to pay a "ten percent bonus" for a $25,000 loan for 30 days. Custer either volunteered or consented to try to get such an individual personal loan from one of the bank's customers.

Enter Mr. Gutherie. He obtained a certified check for the $25,000, payable, not to Panackia or Thomas Built Homes, but to Brown. A meeting was held at Brown's office. Gutherie brought the certified check. At this point there arise sharply disputed questions of fact. In order that we may present both versions of what took place with complete objectivity, we quote from the respective statements of facts. Appellant Gutherie recites:

"Saturday, February 29, 1964, Gutherie brought the certified check to the office of Mr. Brown. Mr. Custer was present as well as representatives of Thomas Built Homes, Inc., and other employees of Mr. Brown. At Mr. Brown's office  *  *  *  Mr. Panackia then executed the promissory note to the order of Roy H. Brown & Company on behalf of himself and Thomas Built Homes, Inc., and handed the promissory note to Mr. Brown in exchange for what turned out to be Mr. Brown's uncertified check

for $25,000. Mr. Brown indorsed the promissory note payable to the order of Mr. Gutherie and gave it to Mr. Gutherie in exchange for Mr. Gutherie's certified check for $25,000 payable to Roy H. Brown & Company.

"Mr. Gutherie then went home with the indorsed promissory note. He walked in with a certified check for $25,000 and he walked out with the promissory note to repay that sum plus interest as contained in the note.

"On the following Monday, March 2, which would be the next day the banks were open, Mr. Brown deposited the certified check of Mr. Gutherie into his bank account.

"On March 9, 1964, the uncertified check of Mr. Brown was deposited into the bank account of Thomas Built Homes, Inc. After that deposit on March 9 the check of Mr. Brown was returned to Thomas Built Homes and to Mr. Panackia by the bank because at that time Mr. Brown did not have $25,000 on deposit.

"The promissory note, by its terms, is without interest to March 29, 1964. After that time it bears six percent interest. The note is Exhibit 1 in the circuit court file."

Appellees, Thomas Built Homes, Inc. and Panackia (as noted, Brown filed no brief), counters with this version:

"On February 29, 1964, all the parties, plaintiff Gutherie, defendant Panackia, defendant Brown, Mr. Custer and Joseph Panackia, Jr., met at defendant Brown's office to consummate the transaction.

"At the meeting, however, plaintiff, Gutherie produced a certified check for $25,000 payable to defendant Brown, instead of the would-be borrower, defendant Panackia. Defendant Panackia questioned the way the check was drawn to defendant Brown, however, was assured that this was the way it should be handled and that defendant Brown

would issue his check for $25,000 to defendant Panackia. Then when defendant Panackia saw that defendant Brown's check (defendant's Exhibit A) was not certified, he reluctantly agreed to go along with it after stating, 'if defendant Brown's check is no good, then my note is no good'. The promissory note (plaintiff's Exhibit Number '1') was executed.

"Plaintiff Gutherie then gave his certified check to defendant Brown, who in turn gave his own uncertified check to defendant Panackia and defendant Brown requested that defendant Panackia not deposit the check for awhile until he (Brown) could deposit Gutherie's check to his account as defendant Brown knew that his account did not contain sufficient funds to cover the check he had just written to defendant Panackia."

Gutherie brought suit against Panackia and Brown on the note for the remaining unpaid face amount of the note plus interest. The trial court awarded summary judgment to Gutherie against Brown for the $21,000 unpaid, but submitted to the jury Brown's liability for interest and Panackia's liability in any amount.

Both defendants contested plaintiff's claims for interest on the basis of the allegedly usurious parol agreement of Brown to Gutherie. Panackia asserted lack of consideration as an affirmative defense against his liability on the note. Gutherie sought to interpose his claimed status as a holder in due course against this affirmative defense. After trial on the merits the jury returned a verdict of no cause of action as to both defendants from which plaintiff appeals.

Under these statements and claims of fact, the following issues of law emerge:

1. Was the admission into evidence of testimony showing Panackia's disavowal of liability on the note if Brown's check should prove worthless erroneous?

"The purported statement of Joe Panackia to Brown that Thomas Built Homes and Joe Panackia would be bound by the note only if Brown's check was good was never part of any understanding between Gutherie and any of the defendants. For this reason, and relying on the interpretation of the parol evidence rule, the court should have excluded parol testimony concerning the purported statements made by defendants' witness to which plaintiff's attorney objected and to which the court granted a continuing objection."

We do no violence to the well-settled rule of law that a party to a written agreement intended to represent the final understanding of the participants may not introduce parol evidence to vary the terms of that written agreement. *Massachusetts Bonding & Insurance Co.* v. *Transamerican Freight Lines, Inc.* (1938), 286 Mich 179. This issue does not arise in the instant case for the testimony in question was not offered or admitted to vary the terms of agreement. Rather, its purpose was to attack plaintiff's claimed status as a holder in due course under MCLA § 440.3307 (Stat Ann 1964 Rev § 19.3307). Subsection 3 of this section of the Uniform Commercial Code clearly calls for a fact determination of plaintiff's status. If parol evidence may not be admitted to show the facts and circumstances surrounding the transaction, such a determination would become well-nigh impossible. It is well established in this state that parol evidence is admissible for this purpose. *Gottesman* v. *Rheinfrank* (1942), 303 Mich 153.

2. Did the trial court err in failing to give instructions requested by plaintiff?

Each separate request to charge, allegedly not given, is stated by plaintiff as a separate issue on appeal and they number nearly a dozen. For pur-

poses of discussion, they can conveniently be grouped together as three separate types.

Some of these requests to charge relate to plaintiff's contention that parol evidence cannot be considered in this case because of the writing. As we have explained above, application of these doctrines to this case would be contrary to settled law and the requested instructions were properly not given.

Other requested instructions related to plaintiff's status as a holder in due course and the burden of proof of this status. While it is true that the trial court did not read plaintiff's requested instructions *verbatim,* it did give a thorough charge on these questions as they arise under the Uniform Commercial Code. The requirement is that the charge adequately inform the jury on the applicable law reflecting and reflected by the various evidentiary claims. *Huffman* v. *First Baptist Church of Flushing* (1959), 355 Mich 437; *Bauman* v. *Grand T. W. R. Co.* (1969), 18 Mich App 450. Upon careful review of the instructions of the court in this case, we are satisfied that these requirements have been met.

The only other requested charge which merits consideration is that the statement of Panackia would not constitute a valid condition precedent to his liability. The plaintiff has not revealed and we have not discovered any relevance of such a charge to the instant case. Defendants at no point suggest failure of a condition precedent as a defense. The trial court did not charge on conditions precedent at all. The defendants' theory was lack of consideration and any charge, whether proper or improper, concerning a possibility of a condition precedent would be at best superfluous and possibly confusing.

The trial court's instructions to the jury come within the rule most recently articulated by this

court in *Bauman* v. *Grand Trunk Western Railroad, supra;* there is no error here.

Affirmed. Costs to the appellee.

All concurred.