**Raymond B. JOHNSON, in his capacity as duly appointed Receiver for FirstSource, Inc., a Michigan corporation, Plaintiff,**

v.

**PRIMERICA LIFE INSURANCE COMPANY, a Massachusetts Insurance Corporation, Defendant and Third–Party Plaintiff,**

v.

**Donna S. Dollar, Third–Party Defendant.**

No. 1:97–CV–195.

United States District Court,
W.D. Michigan,
Southern Division.

Oct. 16, 1998.

Paul L. Nelson, Tolley, VandenBosch, Walton, Korolewicz, et al., Grand Rapids, MI, for FirstSource, Inc., James Dudick.

Paul L. Nelson, Miles J. Postema, Tolley, VandenBosch, Walton, Korolewicz, et al., Grand Rapids, MI, for Raymond B. Johnson.

Thomas Van Dusen, Bodman, Longley & Dahling, LLP, Troy, MI, for Primerica Life Insurance Company.

William C. Reens, Borre, Peterson, Fowler & Reens, PC, Grand Rapids, MI, for Donna S. Dollar.

### OPINION RE CROSS MOTIONS FOR SUMMARY JUDGMENT

HILLMAN, Senior District Judge.

This is a four-count action brought by the receiver of a corporation to recover insurance proceeds on three life insurance policies. The complaint seeks declaratory judgment and alleges negligence, breach of contract and fraud in the payment of insurance death benefits. Defendant, Primerica Life Insur-

ance Co., also has brought a third-party complaint seeking indemnification from the payee of the insurance policy proceeds, Donna Dollar. The matter is before the court on cross-motions for summary judgment filed by plaintiff Johnson and defendant Primerica.

## I. BACKGROUND

This case involves a dispute about payment of the proceeds of three insurance policies issued by Primerica on the life of Truman Dollar ("Dollar"). On March 26, 1996, Dollar died of a self-inflicted gunshot wound.

Dollar was the principal shareholder, president and director of three Michigan corporations: Resource Management Services, Inc. ("RMS"), Resource Financial Services ("RFS") and Resource Temporary Services ("RTS"). One of Dollar's sons, Devin Dollar, owned a minority interest in RMS and RFS. James Dudick owned a minority interest in RFS and served as accountant for RMS. (Pl.Ex. F: Dudick Aff. ¶ 1.). In August 1992, RFS changed its name to RTS. Subsequently, the assets of RMS and RTS were transferred to FirstSource, Inc. Dollar was principal shareholder, director and president of FirstSource. Devin Dollar owned a minority interest. Dudick owned a minority interest and served as the company's chief financial officer.

Plaintiff Raymond Johnson has been appointed receiver for FirstSource, Inc. Johnson has brought this action to recover the proceeds of three insurance policies, allegedly purchased as key-man policies for the benefit of the company.

The policies at issue were applied for in April 1992 and September 1992. Dudick testified that Dollar advised him in early 1992 that he thought that RTS and RFS should obtain insurance on the lives of key officers of RTS and RMS. (Dudick Aff. ¶ 2.) Dudick contacted Phil and Jeff Ripley, agents for defendant Primerica Life Insurance Co., about obtaining key-man life insurance. (Dudick aff. ¶ 3.)

On April 27, 1992, Dollar applied for life insurance in the amount of $350,000, listing the primary beneficiary as RFS (the "RFS policy"). By the time the policy was issued,

however, the beneficiary of this policy had been changed to the estate of Truman Dollar as the result of a change of beneficiary form received by the company on August 20, 1992. Also on April 27, 1992, Dollar applied for a policy on his life in the amount of $500,000, with the initial primary beneficiary listed as RMS (the "RMS policy"). Both policies were issued by Primerica on September 5, 1992. On September 16, 1992, Dollar applied for life insurance in the amount of $125,000, listing RTS as both owner and primary beneficiary (the "RTS policy"). That policy was issued by Primerica on November 16, 1992. On November 22, 1995, Dollar changed the primary beneficiaries on all three policies to his wife, Donna Dollar.

The premiums for all three policies were paid by the corporations. Plaintiff contends that the insurance policies were intended to be key-man policies, for the sole benefit of the companies. In support of this claim, Johnson cites the applications for insurance, which were incorporated by reference into the policies. Specifically, plaintiff points to the fact that the $500,000 policy includes Devin Dollar as an "other insured," directly referencing Devin Dollar as a "key man." (Def.Ex.B.) Similarly, on the $350,000 policy for RFS, William Van Steenis is included as an "other insured," and he is referred to as a "part owner in above business." (Def.Ex.A.) William Van Steenis declares in his affidavit that he was an owner of RFS until June 1992. He avers that on April 27, 1992, he, in addition to Dollar, signed the application for life insurance for the $350,000 policy. He further avers that "[i]t was agreed and understood among the owners of RFS that the life insurance issued pursuant to [that] application would be owned by the company, and that the death benefit proceeds would be payable to RFS as beneficiary, for its use in paying any claims by creditors or others against RFS after the death of an insured." (Pl.Ex. H: Van Steenis aff. ¶ 3.) Similarly, Dudick testified at deposition that the companies had resolved to purchase life insurance policies payable to the companies:

It was agreed that Truman Dollar would have a life insurance policy purchased on his life payable to Resource Management

Services. It was agreed that Truman Dollar and William Van Steenis would have life insurance placed on their lives payable to ... one of the two companies, and it was either Resource Temporary Services or Resource Management Services, as he was involved slightly in both of those, and lastly—well, let me add to that, and, also, Truman Dollar was to have a policy written on his life payable to Resource Temporary Services. Those policies—that happened in 1992.

Dudick dep. pp. 21–22.

Further, policies in the names of Devin Dollar and James Dudick, issued in December of 1992 for $125,000 each, both declare RTS as owner of the policy. (Pl.Ex.L, M.) In addition, plaintiff presented the deposition testimony of James Dudick who contended that the agent who sold the policies was aware that the policies were intended to be key-man policies to be paid for by the company and that the beneficiary was to be the company. (Dudick dep. p. 139, p. 28.) Moreover, plaintiff has submitted Dudick's affidavit stating that he had spoken to Phil Ripley in October 1996, who "confirmed his understanding that the purpose of the Policies was to provide keyman insurance." (Pl. Ex. F: Dudick aff. ¶ 8.)

In his complaint, plaintiff claims that the company was negligent in paying premiums to Donna Dollar and negligent in conducting its investigation of the proper owner and beneficiary of each policy. Plaintiff's complaint also alleges that when the company was advised by Dudick of the contested ownership, it negligently told Dudick that the original beneficiary on the RMS and RFS policies was the estate of Truman Dollar. Finally, in his brief, though not in his complaint, plaintiff claims that the company was negligent in not writing a policy with an irrevocable beneficiary or not accurately commemorating the intent of the corporation and the insured when purchasing the policies. Defendant has not objected to inclusion of this theory of relief.

Defendant has presented the affidavit of the agent, Jeff Ripley, who wrote the two largest policies. Ripley was the former national sales director of A.L. Williams & Associates, which was the predecessor of Primerica Financial Services. Jeff Ripley avers that he met with Truman Dollar and James Dudick to complete the policy applications. He claims that he went over each item on the applications with Truman Dollar. Knowing that the policy face values were large and knowing that the corporations were the listed beneficiaries and would be paying the premiums, Jeff Ripley avers that he specifically asked if the corporations should be listed as the policy owners, but that Dollar decided that he was to be the owner as well as the insured. Ripley states that he believes that Dudick was present at the time. (Ripley aff. ¶¶ 10–12.) At his deposition, Dudick did not deny that Ripley asked the question, saying only that he did not recall the conversation. (Dudick dep. pp. 126–27.) Ripley, however, does not dispute Dudick's testimony that Ripley was aware of the intent of the parties that the policies be key-man policies for the benefit of the corporation. Ripley also does not allege that he asked about whether the beneficiary designations were intended to be revocable.

In addition to his negligence claim, plaintiff also seeks a declaratory judgment that Primerica had notice that the RMS and RFS policies were owned by Dollar as a fiduciary for the corporations and their successor, FirstSource. Plaintiff further seeks declaratory judgment that Primerica, having received notice of the adverse claim by First-Source, failed to exercise adequately its duty of due care in determining the true nature and intent of the policies.

Plaintiff further alleges that FirstSource is the legal owner of the RTS policy and the equitable owner of the RFS and RMS policies and that Primerica breached its contractual duty to pay the proceeds of the policies to FirstSource. Finally, plaintiff alleges that Primerica committed fraud when it misrepresented to Dudick the original beneficiaries on the RMS and RFS policies, causing him to withdraw his objections to the payment of proceeds to Donna Dollar.

## II. DISCUSSION

### A. Standard of Review

On a motion for summary judgment, the court must consider all pleadings, deposi-

tions, affidavits and admissions and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party moving for summary judgment has the burden of pointing the court to the absence of evidence in support of some essential element of the opponent's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate that there exists a genuine issue for trial. *Id.*

In order to prove that a triable issue exists, the nonmoving party must do more than rely upon allegations, but must come forward with specific facts in support of his claim. *Id.* After reviewing the whole record, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). " '[D]iscredited testimony is not [normally] considered a sufficient basis' " for defeating the motion. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505 (quoting *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 512, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)). In addition, where the factual context makes a party's claim implausible, that party must come forward with more persuasive evidence demonstrating a genuine issue for trial. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548; *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. 1348; *Street,* 886 F.2d at 1480.

### B. *Declaratory Judgment & Breach of Contract Claims*

#### 1. The RTS Policy ($125,000)

The parties agree that the policy for $125,000 names RTS as both initial beneficiary and owner. By the policy's terms, the owner of the life insurance policy retains the right to designate and change beneficiaries. De-

fendant contends that as president and principle shareholder, Dollar was authorized to change the beneficiary on behalf of the company. Defendant therefore contends that payment to Donna Dollar, as beneficiary named by Dollar in November 1993, was proper.

■ Defendant, however, has introduced no evidence suggesting that Dollar was authorized to act on behalf of the corporation in the absence of authorization by the board of directors. *See In re Wolensky's Ltd. Partnership,* 163 B.R. 615, 620 (Bkrtcy.D.D.C. 1993) (officer of corporation authorized to act only as specified in the bylaws or by resolution of the board). To the contrary, the shareholders of RTS (Dollar, Dudick and Devin Dollar) entered into an agreement in November of 1992 that declared that the shareholders had purchased life insurance on the lives of the other shareholders and that such policies would be maintained and that beneficiaries would not be changed during the life of the agreement. Def.Ex. I, Section 8. Accordingly, under the terms of the shareholders agreement, Dollar was not authorized to take any action to change the beneficiary of the policy.

Moreover, defendant presents no evidence that any subsequent action was taken by the board of directors authorizing the change of beneficiary. *See Wolensky's,* 163 B.R. at 620–21 (absence of corporate authorization for action of general partner in transferring beneficiary). In contrast, both Van Steenis and Dudick have testified that the policies were at all times intended to be corporate key-man policies, the premiums were at all times paid by the company, and the policies were kept by the company and recorded on its list of assets. Moreover, no valid corporate purpose has been proffered by defendant that would support Dollar's authority to change the beneficiary on behalf of the corporation. *Id.* at 622.

■ Accordingly, in light of the plain language of the policy and the absence of any apparent or actual authority to change the beneficiary, the beneficiary change was not properly executed. Defendant therefore is obliged to pay the RTS policy proceeds to

RTS or its successor. Plaintiff's motion for summary judgment on the RTS policy is granted.

### 2. The RMS Policy ($500,000) and RFS Policy ($350,000)

Defendant contends that the RMS and RFS policies clearly declare that Dollar was intended to be owner of the policies and that he retained the right to change the beneficiary designation. As a result, defendant asserts that plaintiff should not be permitted to introduce other evidence of the parties' intent. Plaintiff contends, however, that under the terms of the contract itself, the application forms part of the contract and various other components of that contract suggest that the parties' intent was that Dollar not be allowed to change the designation of the corporate beneficiaries.

Unlike the $125,000 RTS policy, the applications for the policies naming RMS and RFS as beneficiaries left blank the ownership line. The application declares that the "owner" section only needs to be completed if the owner is intended to be different than the insured. The "owner" section on both applications was left blank. Accordingly, by default, the application implicitly states that the insured (Dollar) was owner of the policy, but no affirmative declaration in the document authenticates the intent of the parties as to ownership. Under the policy, the owner retained the right to change the beneficiary at any time. (Def.Ex. F, Parts 2–3.)

Insurances policies are contracts, and their meaning is to be interpreted according to ordinary principles of contractual interpretation. *See Prestige Cas. Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340, 1350 (6th Cir.1996). The court is obligated to "determine what the agreement was and effectuate the intent of the parties." *Id.* (quoting *Auto–Owners Ins. Co. v. Churchman*, 440 Mich. 560, 489 N.W.2d 431, 433–34 (1992)). Where possible, the intent of the parties is to be drawn from the four corners of the instrument. *Id.; Rogers v. Great Northern Life Ins. Co.*, 284 Mich. 660, 279 N.W. 906, 908 (1938). Where the intent of the parties is unclear from the instrument, however, the court may consider extrinsic evidence to show the circumstances under which the instrument was executed. *Fire Ins. Ass'n v. Wickham*, 141 U.S. 564, 12 S.Ct. 84, 35 L.Ed. 860 (1891). Similarly, evidence outside the transaction is admissible to show the party's status as a holder in due course. *Gutherie v. Thomas Built Homes, Inc.*, 29 Mich.App. 371, 185 N.W.2d 405 (1971). Plaintiff, therefore, suggests that the intent of the parties is unclear from the face of the agreement, and the court must consider extrinsic evidence of actual intent.

In addition, under Michigan law, "[a]n insured who retains the right to change the beneficiary may do so at his pleasure." *Chrysler Corp. v. Disich*, 295 Mich. 261, 264, 294 N.W. 673, 674 (1940). However, "a court of equity will nullify a change of beneficiary which cuts off the rights of one named as beneficiary which have become vested." *Id.* at 265, 294 N.W. 673.

In order to obtain a vested right in an insurance policy, an express contract founded on valuable consideration must exist between the insured and the beneficiary. *Id.; Schiller–Bund v. Knack*, 184 Mich. 95, 150 N.W. 337, 339 (1915); *MacDonald v. Conservative Life Ins. Co. of Wheeling*, 292 Mich. 182, 290 N.W. 372, 374 (1940). The burden of proving the contract is upon the party claiming the vested interest. *Disich*, 295 Mich. at 265, 294 N.W. 673. Accordingly, under Michigan law, plaintiff may be able to prove the corporations had vested rights in the policies by showing an express contract between the corporation and Dollar not to change beneficiaries in exchange for payment of premiums or other consideration.

The Michigan rule is consistent in principle with the decisions of those few jurisdictions that have addressed the specific question of ownership and vested beneficiary rights retained by companies who purchase key-man insurance policies on the lives of critical employees. *See generally Payment of premiums by corporation on corporate officer's life insurance policy as affecting right to policy*, 56 A.L.R.3d 1086 (1974 & Supp.1997). While the facts of these limited cases vary, most jurisdictions that have addressed the issue have held that such purchase of a policy by a

corporation results in a constructive trust in favor of the corporation. *See, e.g., Gas–Ice Corp. v. Newbern,* 263 Or. 227, 501 P.2d 1288 (1972).

In *Gas–Ice,* the plaintiff corporation purchased insurance upon the life of the president, naming the insured as owner, but the corporation as beneficiary. There, as here, the premiums were paid by the corporation and the original designated beneficiary was the corporation. The Oregon Supreme Court held that despite the fact that the policies provided that the beneficiary could be changed without notice to the corporation, the policies became corporate assets and were impressed with a trust under which the insured held them as a fiduciary for the benefit of the corporation.

Similarly, in *Van Deventer v. Dallas Brush Mfg. Co.,* 443 S.W.2d 426 (Tex.Civ.App.1969), the court allowed reformation of an insurance policy to allow the corporation to be paid the cash surrender value of the policy where it was shown that the policy was intended to be a corporate policy and was paid for by the corporation. Further, in an action in which a corporation with whom the insured was a principal stockholder sought to establish either a trust or an equitable lien against the proceeds of the policy, the court held that a new trial was appropriate because there existed evidence that the corporation and the insured had agreed that the corporation would pay the premiums on the policy in consideration of the insured making it the beneficiary. *Massachusetts Linotyping Corp. v. Fielding,* 312 Mass. 147, 43 N.E.2d 521 (1942). The court held that if there existed such an agreement and the corporation performed its part of the agreement, the corporation would acquire an equitable right to the proceeds of the policy which it could enforce against a person subsequently named as beneficiary. *See also Wellhouse v. United Paper Co.,* 29 F.2d 886, 887 (5th Cir.1929) ("Whatever rights or privileges the insured had under the terms of the policy, he held in trust for the party from whom the consideration proceeded."); *McMullen v. St. Lucie County Bank,* 128 Fla. 745, 175 So. 721 (1937) (holding that where corporation takes out insurance on the life of its officers or employees in whom it has an insurable interest and pays the premiums, a resulting trust arises in favor of the corporation which inhibits recovery by the insured's personal estate); *Chapman v. Lipscomb–Ellis Co.,* 194 Ga. 640, 22 S.E.2d 393 (1942) (holding that corporation was entitled to policy proceeds where corporation owned policy, paid premiums and was named beneficiary).

In the face of this case law, however, defendant contends that this court is bound by Sixth Circuit authority interpreting the federal tax code. In *Piggott's Estate v. Comm'r of Internal Revenue,* 340 F.2d 829 (6th Cir. 1965), the Sixth Circuit was asked to decide whether the estate of an insured was chargeable for tax purposes with the amount of an insurance policy issued for the benefit of the company of which he was president and chairman of the board. The court held that, under the tax laws, the decedent retained sufficient "incidents of ownership" to warrant inclusion of the assets of the estate, despite the fact that the company at all times remained the designated beneficiary. The court reasoned that because the decedent could have changed the beneficiary at any time, the policies were taxable assets of his estate. In dicta, the court held that the decedent's intent with respect to the policies was a factual issue for trial.

Subsequently, in *Cockrill v. O'Hara,* 302 F.Supp. 1365 (M.D.Tenn.1969), the court held that, pursuant to the intervening decision of the Supreme Court in *Commissioner of Internal Revenue v. Estate of Noel,* 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965), the intent of the insured was controlled by the terms of the policy alone, and not provable by extrinsic evidence. Accordingly, the *Cockrill* court held that the *Piggott* dicta that intent was a jury question had been overruled by *Noel,* and the IRS was entitled to summary judgment on the question whether a policy naming a company as beneficiary was chargeable to the estate of a decedent who retained the right to change the beneficiary designation.

The authorities cited by defendant, however, are not applicable to the determination before this court. The cited cases do not purport to interpret any state's law govern-

ing the interpretation of insurance contracts. Instead, the courts merely address the federal tax consequences of particular policy terms.

Michigan has recognized the right of a corporation to obtain life insurance on its key personnel to mitigate the effect of their deaths upon the corporation. *See Secor v. Pioneer Foundry Co.*, 20 Mich.App. 30, 173 N.W.2d 780 (1969). Moreover, pursuant to Mich.Comp.Laws § 500.2210(2), each of the corporations here had an insurable interest in Dollar's life as a director and officer of the company. Section 500.2210(4) also provides that "[t]he proceeds of any policy or certificate issued pursuant to subsection (2) is exempt from the claims of any creditor or dependent of the insured." Accordingly, the statute evidences a legislative intent to generally protect from personal claims the insurable interest of corporations which purchase key-man policies.

In the instant case, both Van Steenis and Dudick have sworn that the RMS and RFS policies were purchased as key-man insurance and that the intent of the corporations and Dollar as the insured was to provide benefit to the corporation in the event of the death of the corporation's principal. Jeff Ripley has averred that he specifically asked who was to be named as owner, but he has not denied that the policies were intended to be corporate, not personal. (J. Ripley Aff. ¶ 12.) In fact, Ripley avers that he understood that the policy beneficiaries were intended to be the corporations and that the substantial premiums were to be paid by those corporations. *Id.* In addition, Dudick has averred that in October 1996, he confirmed with Phil Ripley his understanding that both policies were key-man policies that would provide insurance to the companies. Dudick aff., ¶ 8.

Moreover, all premiums on both policies were directly paid by the corporation from the date of application of each policy. In fact, both policy applications included a copy of the relevant corporation's bank check through which the companies authorized automatic premium payments. Pl.Ex. I, p. 8; Pl.Ex. J, p. 8. Further, the application for the RMS policy includes as an "other insured"

the name of Devin Dollar, another corporate officer, who also completed an application. The application further notes that, "Devin is 5% owner in Corp. is a Key Man." Pl.Ex. J, p. 5. The application for the RFS policy shows "William Steenis" [sic] as an "other insured." He is described on page 5 of the application as, "Part owner In above Business." Both notations support a conclusion that the policies were intended to be corporate rather than personal. As a result, the policy applications themselves, which are made part of the contract of insurance, provide some evidence of an intent of the parties to apply for insurance policies for the benefit of the corporations, as opposed to personal policies.

In addition, with respect to the RFS policy, as with the RTS policy previously discussed, the shareholders of the company entered into an agreement in November 1992 under which the shareholders would not change beneficiaries. (Def.Ex. I, Section 8.) Because RFS changed its name to RTS in August 1992, a question of fact exists whether the agreement referred to the earlier RFS policy as well as the RTS policy. The shareholders agreement refers to Schedule A to the agreement, which was intended to list the policies in question. Inasmuch as Schedule A has not been attached by defendant to the exhibit before the court, however, a question of fact exists whether the RFS policy was included.

Based on all of the evidence introduced, the court concludes that the intent of the parties as reflected in the entire contract of insurance, including the application, is ambiguous. I am persuaded that a genuine issue of material fact exists concerning the parties's intent at the time the policies were purchased and the corporations began making payments. Accordingly, I conclude that a trial is warranted on the question of whether the beneficiary rights of the corporation had vested and whether Dollar's ownership of the policy and right to change beneficiaries was held in constructive trust for the corporations.

### C. *Negligence Claim (Count II)*

Following the death of Truman Dollar, defendant was placed on notice of Dudick's

claim that the life insurance contracts at issue had been purchased by the companies as key-man insurance and the beneficiary had been inappropriately amended to name Dollar's family. (Pl.Ex.O.) In response, the defendant advised that the initial beneficiary on both policies was the estate of Truman Dollar, which was later amended to Dollar's wife, Donna Dollar. That information was inaccurate. Instead, the application, which formed part of the contract, listed RMS and RFS as beneficiaries on the policies. Admittedly, before issuance of the RFS policy, the beneficiary designation was changed to the estate of Truman Dollar. Nevertheless, as defendant was aware, the initial beneficiary at the time of application was intended to be the corporation and the corporation continued to pay all premiums. Rather than initiate an interpleader action, however, defendant elected to pay the proceeds of the policy to Donna Dollar.

Plaintiff alleges that as a result of the company's representations that the policies had been purchased by Dollar personally, Dudick subsequently withdrew his objection on the RMS and RFS policies because he had no proof of his claims. Nevertheless, he advised the company that he did not act for the corporations and that he continued to believe that the policies had been paid for by the corporations. He continued his objection with respect to the RTS policy.

■ Defendant contends that Count II of plaintiff's complaint, alleging negligence in investigating and paying out policy proceeds, must be dismissed for several reasons. First, defendant contends that it owed no duty to plaintiff on the RMS and RFS policies because plaintiff had no legal interest in those policies. In light of the court's previous conclusion regarding the question of the parties' intent in purchasing the policies and the knowledge of defendant of the dispute, the position is untenable. If plaintiff is shown to have a vested right as beneficiary, given defendant's knowledge of the competing claim, defendant owed a duty of due care to the legal beneficiary under the policy. *See Shebester v. Triple Crown Insurers,* 826 P.2d 603, 610 (1992) (insurer who chooses to pay one of two or more competing claims does so

at its own risk; payment to named beneficiary with notice of another person's adverse claim renders insurer liable to legally entitled claimant); *Gray v. Holyoke Mut. Fire Ins. Co.,* 293 Ala. 291, 302 So.2d 104 (Ala. 1974) (insurer liable for payment of proceeds to estate of husband while on notice that wife's estate also making claim); *McDonald v. McDonald,* 632 S.W.2d 636 (Tex.App.1982) (insurer liable for payment to ex-wife as named beneficiary after department of insurer received notice from estate that recent divorce decree awarded policy to deceased); *Stavros v. Western & Southern Life Ins. Co., Inc.,* 486 S.W.2d 712 (Ky.1972) (payment to named insured improper where company should have been on notice that change of beneficiary was unauthorized).

Defendant also asserts that Dudick did not rely on any alleged misrepresentations by the company because he testified that he did not believe the company's representations that the original beneficiaries of the RMS and RFS policies were the corporations. Defendant therefore contends that its negligent misrepresentations caused no harm.

■ At deposition, however, Dudick testified that while he did not personally believe defendant's representations about the original designated beneficiaries, he concluded from those representations that he would be unable to prove the original intent of the policies. (Dudick dep. pp. 59–60.) He therefore abandoned the claim rather than face the risk of a threatened suit for interference with Donna Dollar's collection of the policy proceeds. Dudick has testified, therefore, to reliance on the misrepresentations in withdrawing his claim. Accordingly, summary judgment is improper.

■ In addition, plaintiff has asserted negligence by the agent in accepting information at the time of application and in forming the contract. If through the mistake of an insurer's agent a policy of insurance fails to express the real contract between the parties, or "if by inadvertence or mistake of the agent, provisions other than those intended are inserted, or stipulated provisions are omitted, ... there is no doubt as to the power of the court to grant equitable relief

by a reformation of the contract." Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d,* § 27:16, p. 27–23 (3d ed.1997). *See also Flanagan v. Harder,* 270 Mich. 288, 258 N.W. 633 (1935). Dudick and Van Steenis have averred that Jeff Ripley was aware of the intent of Dollar and the corporations in forming the contracts but negligently failed to draft a policy that protected that intent. Accordingly, a question of fact exists concerning negligence.

Finally, defendant contends that no negligence action lies with respect to the $125,000 RTS policy. In light of the court's decision that summary judgment should be granted to plaintiff on the $125,000 policy as a matter of contract interpretation, this issue is moot.

### E. *Fraud*

█ Defendant asserts that plaintiff cannot prove fraud because he cannot prove that he relied upon defendant's misrepresentations concerning original beneficiaries on the RMS and RFS policies. As I noted with respect to plaintiff's negligence claim, Dudick testified that the misrepresentations about its records led him to drop his claim because of his lack of evidence to support his claim that the parties intended to purchase keyman insurance rather than personal insurance. If in deciding to drop his claim Dudick relied on the company's fraudulent representations about its proofs, he relied to his detriment on the misrepresentation, even if the misrepresentation did not cause him to change his belief about the underlying facts. Therefore, as I concluded with respect to the negligence claim, Dudick's testimony is sufficient to create a question of fact regarding reliance.

### III. *CONCLUSION*

For the foregoing reasons, defendant's motion for summary judgment (docket # 53) is **DENIED.** Plaintiff's motion for summary judgment (docket # 37) is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's motion for summary judgment on policy number 04–30060217 in the amount of $125,-000 is **GRANTED.** Plaintiff's motion for summary judgment on the remaining two policies is **DENIED.**

### *ORDER AND JUDGMENT*

In accordance with the opinion filed this date,

**IT IS ORDERED** that defendant's motion for summary judgment (docket # 53) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (docket # 37) is **GRANTED AND DENIED IN PART.** As to claims regarding the $125,000 RTS policy (policy number 04–30060217), plaintiff's motion is **GRANTED** and judgment as to those claims is hereby entered in favor of plaintiff and against defendant in the amount of $125,000, plus costs and interest and provided by law.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment is **DENIED** in all other respects.